CAROLINA MEDICORP, INC., FORSYTH MEMORIAL HOSPITAL, INC., MEDICAL PARK HOSPITAL, INC., REBA J. SMITH, CLEVELAND MEMORIAL HOSPITAL, DINA L. BRADDY, MOORE REGIONAL HOSPITAL AND ELIZABETH MATHESON-SMITH, PETITIONERS v. BOARD OF TRUSTEES OF THE STATE OF NORTH CAROLINA TEACHERS' AND STATE EMPLOYEES' COMPREHENSIVE MAJOR MEDICAL PLAN, AND DAVID G. DEVRIES, AS EXECUTIVE ADMINISTRATOR OF THE NORTH CAROLINA TEACHERS' AND STATE EMPLOYEES' COMPREHENSIVE MAJOR MEDICAL PLAN, RESPONDENTS

No. 9410SC427

(Filed 18 April 1995)

1. Public Works and Contracts § 29 (NCI4th)—hospitals— preferred provider contracts—competitive bidding—not required

The trial court did not err by failing to conclude that respondents violated the public contracting statutes concerning competitive bids when they executed preferred provider contracts with petitioners for the North Carolina Teachers' and State Employees' Comprehensive Major Medical Plan. The method of obtaining the preferred provider contracts was not governed by the public contracting statutes because the language of N.C.G.S. § 143-49(3) provides that those statutes apply when the Secretary of Administration purchases or contracts for contractual services; here, the plan members themselves purchased or contracted for hospital services and respondents merely entered into preferred provider contracts concerning the rates charged for services provided by hospitals to plan members. The preferred provider contracts were not for the needs of the State but were for the benefit of individual Plan members.

Am Jur 2d, Public Works and Contracts §§ 34 et seq.

2. Public Works and Contracts § 29 (NCI4th)— health insurance—preferred provider contracts with hospitals—public contracting statutes—exemption

Assuming that the public contracting laws apply to the preferred provider contracts entered into with hospitals by the North Carolina Teachers' and State Employees' Comprehensive Major Medical Plan, the State Purchasing Officer would still have the authority to exempt the preferred provider contracts from the competitive bidding process because the North Carolina

Administrative Code provides that the State Purchasing Officer may designate any service as exempt from "these procedures."

**Am Jur 2d, Public Works and Contracts §§ 34 et seq.**

3. **Public Works and Contracts § 29 (NCI4th)— health insurance—preferred provider contracts—statutory amendment**

Senate Bill 1148, which amended N.C.G.S. § 135-40.4, provided that preferred provider contracts for the North Carolina Teachers' and State Employees' Comprehensive Major Medical Plan would not be subject to the requirements of Chapter 143 of the General Statutes, which involve competitive bidding. Savings language at the end of the bill which provides that the Act shall not apply to any litigation or administrative proceeding prior to that date does not show that the public contracting laws applied to preferred provider contracts before then, but plainly means that the Act does not affect pending litigation. A change in the title of the bill did not show that the public contracting laws applied before the bill.

**Am Jur 2d, Public Works and Contracts §§ 34 et seq.**

4. **Public Works and Contracts § 29 (NCI4th)— health insurance—preferred provider contracts—recoupment of money**

The trial court did not err in ruling that petitioners were not entitled to recoup from respondents money they allegedly lost by providing discounts to hospital patients under preferred provider contracts which were lawfully entered into.

**Am Jur 2d, Public Works and Contracts §§ 34 et seq.**

5. **Estoppel § 15 (NCI4th)— health insurance—preferred provider contracts—standing to challenge**

The trial court did not err in failing to rule that the hospital petitioners are entitled to challenge respondents' actions in executing preferred provider contracts for the North Carolina Teachers' and State Employees' Comprehensive Major Medical Plan even though petitioners executed the contracts under protest. The preferred provider contracts were not void and the doctrine of estoppel by benefit applies to estop petitioners. Although petitioners argue that they did not benefit in that they lost money by executing the contracts, the record is clear that petitioners benefited from the contracts by retaining Plan members as customers. Voluntariness is not an element of quasi estop-

pel and, even if it were, petitioners chose to avoid the risk of losing patients to other preferred provider hospitals and were not compelled to sign the contracts. Finally, detrimental reliance is irrelevant under quasi-estoppel.

**Am Jur 2d, Estoppel and Waiver §§ 26-113.**

**6. Public Works and Contracts § 29 (NCI4th)— health insurance—preferred provider contracts—challenges by individuals—not named as taxpayers**

The trial court did not err by dismissing the individual petitioners' claims challenging preferred provider contracts executed by the North Carolina Teachers' and State Employees' Comprehensive Major Medical Plan where the individual petitioners were not named in the petitions in their capacity as taxpayers.

**Am Jur 2d, Public Works and Contracts §§ 34 et seq.**

Appeal by petitioners from order entered 29 November 1993 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 2 February 1995.

The Teachers' and State Employees' Comprehensive Major Medical Plan (hereinafter Plan) provides health insurance coverage for state employees, state retirees, and their dependents. From 1985 until 1993, G.S. 135-40.4(a) authorized the Board of Trustees of the Plan (hereinafter Board) to "begin the process of negotiating prospective rates of charges that are to be allowed under the Plan with preferred providers of institutional and professional medical care and services." In 1993, G.S. 135-40.4(a) was amended to provide that the Board "may contract with providers of institutional and professional medical care and services to established preferred provider networks."

Pursuant to the Plan, "preferred providers" are health care providers which contract to provide health care services to Plan members at prices lower than other providers offer. Under the proposal submitted by the Plan's Executive Administrator, David G. DeVries, each hospital could become a preferred provider pursuant to a straight discount method if it agreed to discount its inpatient room and board charges and its outpatient charges by 5% and agreed to discount its inpatient ancillary charges by 8%. As an alternative to the straight discount method, a hospital could become a preferred

provider under a "per case arrangement" whereby "the Plan [would] pay[] the hospital a fixed amount for broad categories of service or treatment, regardless of the patient's length of stay at the hospital." Plan members who used North Carolina hospitals which were not preferred providers would be subject to an additional "twenty percent (20%) coinsurance rate up to five thousand dollars ($5,000) per fiscal year per covered individual." G.S. 135-40.8(d). The Plan sought a formal determination by the State Purchasing Officer that the preferred provider contracts were exempt from competitive bidding requirements of Chapter 143. The State Purchasing Officer, William J. Stuckey, stated that the contracts did not constitute "contractual services" and declared them exempt from Chapter 143 pursuant to N.C. Admin. Code tit. 1, r. 05D.0302(9) (July 1988). All 117 North Carolina hospitals contracted with respondents.

The hospital petitioners challenged respondents' decision to require the discounts of all participating hospitals without differentiation because the hospital petitioners here claimed that they already charged less than other hospitals in the state. Plan members Reba J. Smith, Dina L. Braddy, and Elizabeth Matheson-Smith joined the hospital petitioners in challenging the validity of the preferred provider contracts. Petitioners filed their cases in the Office of Administrative Hearings and the cases were consolidated for hearing. On 29 January 1993, Administrative Law Judge (hereinafter ALJ) Robert R. Reilly, Jr. issued a recommended decision declaring that "[r]espondents contracted for services contrary to Article 3 of GS Chapter 143." Nevertheless the ALJ concluded that summary judgment should be granted in favor of respondents because the hospital petitioners were estopped to pursue their claims and the individual petitioners lacked standing to sue. The final agency decision rejected the ALJ's conclusion that respondents violated Article 3 of Chapter 143, agreed that summary judgment should be granted in favor of respondents, and dismissed petitioners' consolidated petitions. On 2 June 1993, petitioners filed a petition for judicial review in superior court. Judge Donald W. Stephens affirmed the final agency decision on 29 November 1993.

Petitioners appeal.

*Petree Stockton, L.L.P., by Noah H. Huffstetler, III., L. Elizabeth Henry, and Gary S. Qualls, for petitioner-appellants Carolina Medicorp, Inc., Forsyth Memorial Hospital, Inc., Medical Park Hospital, Inc., Reba J. Smith, Moore Regional Hospital, and*

*Elizabeth Metheson-Smith; and Church Paksoy & Wray, by John Church, for petitioner-appellants Cleveland Memorial Hospital, Inc., and Dina L. Braddy.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General Jo Anne Sanford and Assistant Attorney General W. Wallace Finlator, Jr., for respondent-appellees.*

EAGLES, Judge.

I.

[1] Petitioners argue that the trial court erred in failing to conclude that respondents violated the public contracting statutes (Chapter 143 of the North Carolina General Statutes) when they executed the 1992-93 preferred provider contracts with petitioners. G.S. 143-49 provides:

> The Secretary of Administration shall have power and authority, and it shall be his duty, subject to the provisions of this Article:
>
> . . . .
>
> (3) To purchase or to contract for, by sealed, competitive bidding or other suitable means, all **contractual services** and needs of the State government, or any of its departments, institutions, or agencies; or to authorize any department, institution or agency to purchase or contract for such services. (Emphasis added.)

G.S. 143-49(3) provides that "contractual services" means "work performed by an independent contractor requiring specialized knowledge, experience, expertise or similar capabilities." Petitioners argue that the preferred provider contracts fit within the definition of contracts for contractual services because the preferred provider contracts expressly provide that the hospitals are independent contractors and the services that hospitals provide require specialized knowledge and skills. Petitioners argue that the State should have followed the competitive bidding process whereby the State issues a written formal request for proposals and solicits proposals from as many sources as possible. Because the State did not follow this procedure, petitioners argue that the State violated the public contracting statutes. We disagree.

The method of obtaining the preferred provider contracts here was not governed by the public contracting statutes during the 1992-93 year. The plain language of G.S. 143-49(3), now and as it existed in

1992-93, provides that the public contracting statutes apply when the Secretary of Administration "purchase[s] or . . . contract[s] for . . . contractual services." Here, the Plan members themselves purchased or contracted for hospital services. Respondents merely entered into preferred provider contracts concerning the rates charged for services provided by hospitals to Plan members. Respondents did not enter into contracts **for** contractual services.

Furthermore, the preferred provider contracts were not for the "needs" of the State, but were for the benefit of the individual Plan members. G.S. 143-51 provides that it is the duty of agencies to notify the Secretary of Administration of "all supplies, materials, contractual services and equipment needed" by them so that the Secretary can purchase or contract for those needs. The language of G.S. 243-51 clarifies that the "contractual services" the statute refers to must be for the State's benefit—not for the benefit of individual Plan members. Accordingly, we hold that the public contracting requirements do not apply to the preferred provider contracts here and that respondents did not violate the statutory negotiating and competitive bidding procedures in obtaining the discount contracts.

[2] Petitioners also argue that the State Purchasing Officer had no authority to exempt the preferred provider contracts from the requirements of the public contracting statutes. To the contrary, assuming arguendo that the public contracting laws apply here, the State Purchasing Officer would still have the authority to exempt the preferred provider contracts from the competitive bidding process. The North Carolina Administrative Code, title 1, r. 05D.0302 provides that the State Purchasing Officer may designate any service as exempt from adherence to "these procedures." Petitioners argue that "these procedures" refers to the Department of Administrations' own regulations, not to the public contracting laws. Petitioners offer no authority for this assertion and we are not persuaded. Further, petitioners argue that North Carolina Administrative Code, title 1, r. 05D.0302 is void because the power it purports to confer on the State Purchasing Officer in effect sets aside the statutory public contracting requirements enacted by the legislature. Petitioners rely on *States' Rights Democratic Party v. Board of Elec.*, 229 N.C. 179, 187, 49 S.E.2d 379, 384 (1948) (stating that any administrative rule which sets aside a provision of a statute the Legislature has enacted to govern the operations of state agencies is a nullity). Here, however, the power granted by North Carolina Administrative Code, title 1, r. 05D.0302 does not set aside any provisions in Chapter 143. G.S. 143-

49(3) provides that the purchase or contracting for services should be by competitive bidding "or other suitable means." Here, the State Purchasing Officer, as a representative of the Secretary of Administration, determined that "other suitable means" were available to acquire these contracts. Accordingly, we hold that even if we assumed that the preferred provider contracts fell within the purview of the public contracting laws, and we do not, the State Purchasing Officer had full authority pursuant to G.S. 143-49(3) and North Carolina Administrative Code, title 1, r. 05D.0302 to exempt the contracts from the competitive bidding process.

[3] Petitioners also argue that the enactment of Senate Bill 1148, which amended G.S. 135-40.4 in 1993, shows that the public contracting requirements in Chapter 143 applied to the 1992-93 preferred provider contracts. We disagree. After reviewing the legislative history of the bill, it appears that petitioners read more into the language of the bill than is justified. The bill, ratified on 24 July 1993, provided that the preferred provider contracts would **not** be subject to the requirements of Chapter 143. Petitioners point to the savings clause at the end of the ratified bill which provides that the act becomes effective 1 July 1993 "and shall not apply to any litigation or administrative proceedings pending prior to that date." Petitioners contend that this language shows that before then, the public contracting laws did apply to the preferred provider contracts. However, this boilerplate language plainly means that the act does not affect pending litigation in any way.

Petitioners also argue that the title of the bill shows that the public contracting laws applied until 1993. As introduced, the title of Senate Bill 1148 was: "AN ACT TO MAKE CLARIFYING CHANGES IN THE TEACHERS' AND STATE EMPLOYEES' COMPREHENSIVE MAJOR MEDICAL PLAN AND TO RESOLVE LEGAL ISSUES BY MAKING CLEAR THAT THE LEGISLATIVE INTENT SINCE ENACTMENT IS THAT CONTRACTING WITH PREFERRED PROVIDERS IS NOT SUBJECT TO CHAPTER 143 OF THE GENERAL STATUTES." By contrast, the title of the bill **as ratified** read: "AN ACT TO AFFECT THE TEACHERS' AND STATE EMPLOYEES' COMPREHENSIVE MAJOR MEDICAL PLAN." Petitioners argue that the title change from "clarifying changes" to "affect" shows that the bill did more than merely clarify the applicability of the contracting laws to the preferred provider contracts. We disagree because the ratified bill contained additional provisions which were not in the proposed bill. The original title was not sufficiently broad to encompass all the provisions of the ratified act.

Petitioners' arguments concerning the import of Senate Bill 1148 are without merit. Accordingly, the trial court did not err in holding that the preferred provider contracts are valid.

## II.

[4] Petitioners also argue that because the preferred provider contracts were unlawful, the trial court erred in failing to rule that the hospital petitioners are entitled to recoup the amount of money they allegedly lost by providing discounts to hospital patients. Because we have determined, *supra*, that the preferred provider contracts were lawfully entered into between petitioners and respondents, it is not necessary to address each of petitioners' arguments related to recoupment of money. We hold that the trial court did not err in ruling that the hospital petitioners were not entitled to recoup money from respondents.

## III.

[5] Petitioners argue that the trial court erred in failing to rule that the hospital petitioners are entitled to challenge as unlawful respondents' actions in executing the preferred provider contracts even though hospital petitioners stated that they were executing the contracts under protest. Petitioners argue that respondents' failure to comply with the mandatory state contracting requirements rendered the preferred provider contracts void pursuant to G.S. 143-58 and therefore hospital petitioners are not estopped from challenging the contracts' validity. G.S. 143-58 provides that contracts for the purchase or lease of services made contrary to the provisions of Article 3 of Chapter 143 shall be void. However, as we have concluded above, the preferred provider contracts were not void. Furthermore, the doctrine of estoppel by benefit applies here to estop the hospital petitioners from challenging respondents' allegedly unlawful actions.

We first note that the trial court based its decision on the doctrine of "estoppel by the acceptance of benefits" which is also referred to as "quasi-estoppel." *Brooks v. Hackney*, 329 N.C. 166, 172 n.3, 404 S.E.2d 854, 858 n.3 (1991). Quasi-estoppel differs from the doctrine of equitable estoppel. Quasi-estoppel "has its basis in acceptance of benefits" and provides that "[w]here one having the right to accept or reject a transaction or instrument takes and retains benefits thereunder, he ratifies it, and cannot avoid its obligation or effect by taking a position inconsistent with it." *Redevelopment Com'n of Greenville v.*

*Hannaford,* 29 N.C. App. 1, 4, 222 S.E.2d 752, 754 (1976). *See Brooks v. Hackney,* 329 N.C. 166, 172, 404 S.E.2d 854, 859 (1991) (stating that a party cannot dispute the validity of a contract after it has accepted benefits which arise from the contract).

Petitioners argue that they did not benefit from the contracts. They assert that they actually lost money by executing the contracts because they could no longer charge as much money for their services to Plan members. However, the record is clear that hospital petitioners did benefit from the contracts. In each of their petitions, the hospital petitioners stated that other hospitals in their areas had already become preferred providers. The hospital petitioners acknowledged that if they did not discount their costs, they could lose patients to nearby preferred providers because Plan members using non-preferred providers were subject to an additional co-payment of twenty percent of the hospital's charge up to $5,000 per year. Accordingly, the hospital petitioners clearly benefitted by becoming preferred providers because thereby they were able to retain Plan members as customers.

Petitioners also argue that estoppel applies because they did not enter into the contracts voluntarily. However, voluntariness is not an element under the doctrine of quasi estoppel. Furthermore, even if it were an element of quasi estoppel, petitioners were not compelled to sign the contracts. They chose to avoid the risk of losing patients to other preferred provider hospitals by signing the contracts. Accordingly, petitioners' argument that estoppel should not apply because they did not voluntarily sign the preferred provider contracts is not persuasive.

Petitioners also argue that respondents did not detrimentally rely on the hospital petitioners' execution of the preferred provider contracts and that detrimental reliance is an essential element of equitable estoppel. However, as we indicated above, we are dealing with quasi estoppel rather than equitable estoppel here. Detrimental reliance is irrelevant under the doctrine of "quasi estoppel." *Taylor v. Taylor,* 321 N.C. 244, 249, 362 S.E.2d 542, 546 (1987), *citing Mayer v. Mayer,* 66 N.C. App. 522, 532, 311 S.E.2d 659, 666, *review denied,* 311 N.C. 760, 321 S.E.2d 140 (1984). Accordingly, petitioners' argument concerning a lack of detrimental reliance is without merit.

Petitioners also argue that the hospital petitioners' execution of their own contracts cannot estop them from challenging the void con-

tracts of others. We have already concluded that the preferred provider contracts are valid. Accordingly, petitioners' argument is without merit.

## IV.

**[6]** Finally, petitioners argue that the trial court erred in ruling that there was no valid basis to support a claim of individual taxpayer harm. In its recommended decision, the ALJ concluded that summary judgment was appropriate for respondents and noted that "[t]he Petitions did not name the individual Petitioners in their capacity as "taxpayers" and therefore that issue is not properly presented in these cases." The Full Commission agreed that summary judgment should be granted in favor of respondents and the trial court affirmed, stating that "the Agency has properly dismissed [the individual petitioners'] claims." We have reviewed the record and conclude that the trial court did not err in dismissing the individual petitioners' claims. Accordingly, the issue of individual taxpayer harm is not before us.

Affirmed.

Judges WALKER and McGEE concur.