141 F.Supp.2d 577 (2001)
In the matter of: Carl William JONES Susan Godwin Jones, Debtors.
Centura Bank, Appellant,
v.
Branch Banking & Trust Co., Appellee.
No. CIV. 3:00CV417-T.
United States District Court, W.D. North Carolina, Charlotte Division.
February 22, 2001.
David M. Warren, Poyner & Spruill, L.L.P., Rocky Mount, NC, for Centura Bank.
Bentford E. Martin, Hamilton, Gaskins, Fay & Moon, PLLC, Charlotte, NC, for Branch Banking and Trust Co.

MEMORANDUM AND ORDER
THORNBURG, District Judge.
THIS MATTER is before the Court on an appeal from the Judgment of United States Bankruptcy Judge J. Craig Whitley entered August 14, 2000, subordinating the Equity Line Deed of Trust of Centura Bank ("Centura") to the Deed of Trust of Branch Bank and Trust ("BB & T"). This Court has jurisdiction over the appeal pursuant to 28 U.S.C. § 158(a)(1). For the reasons stated herein, the Bankruptcy Court's Judgment is affirmed.

I. STANDARD OF REVIEW
The decision of the Bankruptcy Court is reviewed by a two-step process. Reversal of the findings of fact of the *578 Bankruptcy Court may occur only where the findings are clearly erroneous. In re Collins, 985 F.2d 553 (table), 1993 WL 22001 (4th Cir.1993) (citing Williamson v. Fireman's Fund Ins. Co., 828 F.2d 249 (4th Cir.1987)); In re Bryson Properties, XVIII, 961 F.2d 496, 499 (4th Cir.1992). The Bankruptcy Court's conclusions of law are reviewed de novo. In re Bryson Properties, 961 F.2d at 499. A finding of fact is clearly erroneous "`when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed.'" Ford Motor Credit Co. v. Dobbins, 35 F.3d 860, 865 (4th Cir. 1994) (quoting Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)).

II. STATEMENT OF FACTS
Because the parties largely agree on the factual background, but dispute the application of law thereto, and because the Court finds that the Bankruptcy Court's findings are not clearly erroneous, the Court will set forth only a brief recitation of facts.
On December 16, 1994, Centura made a commercial loan of $225,000 ("SBA Loan") to the Debtors' business, KRJ Motors, Inc. This loan was guaranteed by the Small Business Administration and secured, in part, by a second deed[1] of trust on the Debtors' residence ("SBA Deed"). The SBA Deed recited that:
This Deed of Trust secures the guaranty of KRJ Motors, Inc., dated December 16, 1994 of a Promissory Note dated December 16, 1994 payable to the order of Centura Bank in the original principal amount of Two Hundred twenty-five Thousand and no/100 Dollars ($225,000.00).
Judgment, at 2. Two years later, the Debtors applied with Centura to extend or refinance the SBA loan. Though Centura refused this request, they agreed to extend Debtors and their business a $100,000 equity line of credit. Debtors secured this loan with another deed of trust on their residence ("Equity Line Deed") in favor of Centura. In recording the Equity Line Deed, Centura committed the error which began the chain of events leading to this appeal. The Equity Line Deed, executed in 1996 and recorded in 1997, recites the following description:
This Deed of Trust secures the guaranty of KRJ Motors, Inc., dated December 16, 1994 of a Promissory Note dated December 16, 1994 payable to the order of Centura Bank in the original principal amount of Two Hundred twenty-five Thousand and no/100 Dollars ($225,000.00).
Id., at 2-3. Obviously, rather than correctly describing the obligation to which the Equity Line Deed related, Centura mistakenly stated that this second deed in Centura's favor secured only the first $225,000 loan. Moreover, the Equity Line Deed made no mention of the first Centura deed as a "prior lien."
In May of 1997, Debtor and BB & T reached an agreement whereby BB & T agreed to lend $225,000 to refinance the SBA Loan and to provide additional working capital for the Debtors' business. This loan was to be secured by a second lien on the Debtors' residence  junior only to the Home Savings deed. The Debtors did not disclose to BB & T the existence of the Equity Line Deed in favor of Centura, of which BB & T was unaware.
In the course of executing their agreement, BB & T hired attorney Dale Fussell *579 to "close the loan." Fussell performed a title search which disclosed the Equity Line Deed. However, because the deed purported to secure the $225,000 SBA Loan, Fussell assumed that both deeds related to the SBA Loan. Relying on the Debtors' disclosures and the information contained in the deeds, Fussell obtained a payoff amount from Centura for the SBA Loan, which, to the best of Fussell's and BB & T's knowledge, would have allowed their deed to occupy the place of "second" deed of trust. In strict accordance with Fussell's request, Centura provided a payoff amount only for the SBA Loan. Thereafter, BB & T and the Debtors "closed" on their loan, and BB & T instructed Fussell to pay off the Centura deed.
Fussell mailed a payoff check to Centura on June 19, 1997. Attached thereto was a letter ("payoff letter") from Fussell to Centura which contained the following (highlighted) statement:
PLEASE NOTE THAT THERE ARE TWO (2)
OPEN DEEDS OF TRUST ON THIS LOAN.
Book 754 Page 216 for $225,000.00
Book 943 Page 813 for $110,000
PLEASE PROVIDE CANCELED PAPERS FROM BOTH LOANS
Id., at 5. Centura received the letter and payoff check, processed the check, and sent Fussell the cancelled SBA Loan note and SBA Deed. However, Centura neither provided the documents pertaining to the Equity Line Deed nor informed Fussell that the payoff amount provided did not include or cover the Equity Line Deed or any underlying obligation connected thereto. On April 23, 1998, Fussell sent a second letter to Centura requesting that they send the cancellation documents for the Equity Line Deed, as he had instructed in the payoff letter. Again, Centura declined to respond in any way to Fussell's instructions.
In 1999 the Debtors and KRJ defaulted on their various loans, and commenced bankruptcy proceedings. This action followed.

III. DISCUSSION
Having conducted a de novo review of the Bankruptcy Court's conclusions of law, this Court finds that the application of the rule of quasi-estoppel is appropriate. "Quasi-estoppel is based on a party's acceptance of the benefits of a transaction, and provides that `[w]here one having the right to accept or reject a transaction or instrument takes and retains benefits thereunder, he ratifies it, and cannot avoid its obligation or effect by taking a position inconsistent with it.'" Parkersmith Properties v. Johnson, 136 N.C.App. 626, 632, 525 S.E.2d 491, 495 (N.C.Ct.App.2000) (quoting Carolina Medicorp, Inc. v. Bd. of Trustees of the State of N.C. Medical Plan, 118 N.C.App. 485, 492-93, 456 S.E.2d 116, 120 (1995) (citation omitted)). "Equity serves to moderate the unjust results that would follow from the unbending application of common law rules and statutes. It is well settled that `a party will not be allowed to accept benefits which arise from certain terms of a contract and at the same time deny the effect of other terms of the same agreement.'" Brooks v. Hackney, 329 N.C. 166, 173, 404 S.E.2d 854, 859 (1991) (quoting Capital Outdoor Advertising, Inc. v. Harper, 7 N.C.App. 501, 505, 172 S.E.2d 793, 795 (1970)). Additionally, "detrimental reliance is irrelevant under the doctrine of quasi-estoppel." Carolina Medicorp, Inc., 118 N.C.App. at 493-94, 456 S.E.2d at 121 (quotation and citation omitted).
Here, Centura accepted the benefits of the transaction but seeks the Court's approval of its refusal to comply *580 with each of the terms of the agreement. By the express terms of Fussell's payoff letter (to which was attached the payoff check), Centura was to cancel both deeds in return for being paid by BB & T the "payoff amount" provided by Centura. If Centura had elected at that time to reject the terms of this deal, they would have been entitled to do so and could simply have returned the payoff check to Fussell. Instead, they chose to cash the check but provide Fussell and BB & T with only one of the cancelled deeds. Indeed, when this happened Fussell again wrote to Centura and requested that they remit the second cancelled deed to him in compliance with the terms of Fussell's first letter. Having thus been given two opportunities to reject the terms of Fussell's letter, Centura instead chose to retain the benefits of the payoff check while at the same time refusing to comply with "the other terms of the same agreement." Brooks, supra. This they cannot do. Id.
While BB & T erred in assuming that the SBA Loan was secured by two separate deeds on the same property, their mistake was caused in large part by Centura's faulty drafting of the deeds. Certainly BB & T would be well advised to exercise more care in the future, but Centura is not an innocent party to these proceedings, as they seek to appear. Having refused to respond to either of Fussell's letters in which he set forth the terms of the transaction and having accepted the benefit arising therefrom (namely, the payoff check), Centura must now comply with each of the terms of the transaction. In sum, this Court agrees with the Bankruptcy Judge's conclusion that the most appropriate remedy under these circumstances is to subordinate Centura's Equity Line Deed of Trust to BB & T's Deed of Trust.

IV. ORDER
IT IS, THEREFORE, ORDERED that the appeal filed by Centura Bank is DISMISSED, and the Judgment of the Bankruptcy Judge is hereby AFFIRMED.
This matter is hereby remanded to the Bankruptcy Court for further proceedings.
NOTES
[1] A first deed of trust existed in favor of Home Savings of America ("Home Savings"), and is only peripherally relevant to this dispute.