GEORGE ELLIS, PLAINTIFF v. TERRY WHITE, LITTLE EGYPT SALVAGE, INC.; D.W. MAYBERRY, IN HIS INDIVIDUAL AND OFFICIAL CAPACITIES, AND LETHA PHILLIPS, DEFENDANTS

No. COA01-1577

(Filed 4 February 2003)

1. **Immunity— sovereign—arresting officer—acting within authority**

A DMV inspector did not act outside the scope of his authority and summary judgment was granted for him correctly on the ground of sovereign immunity on claims of false arrest, malicious prosecution, and abuse of process where the inspector, defendant Mayberry, became involved in a dispute between plaintiff and the salvage dealer from whom plaintiff bought a truck and plaintiff was arrested for obstructing the inspector.

**2. Civil Rights— 42 USC § 1983—underlying constitutional right not clearly stated—officer within his authority**

Summary judgment was correctly granted for a DMV inspector in his individual capacity on a 42 U.S.C.§ 1983 claim on the ground of qualified immunity where the inspector became involved in a dispute between a salvage dealer and plaintiff over a pick-up truck and plaintiff was arrested for obstructing the inspector. It could be discerned from plaintiff's brief that he believed his Fourth Amendment right was abridged, although it was not clearly stated, but defendant had probable cause to arrest plaintiff and acted within his authority.

**3. Appeal and Error— preservation of issues—issue not raised at trial**

The issue of whether plaintiff was entitled to summary judgment on tort claims ex mero motu was not addressed on appeal because plaintiff had not presented the issue to the trial court.

Appeal by plaintiff from order entered 10 September 2001 by Judge Charles C. Lamm, Jr., in Gaston County Superior Court. Heard in the Court of Appeals 9 October 2002.

*Ferguson Stein Chambers Wallas Adkins Gresham & Sumter, P.A., by S. Luke Largess, for plaintiff appellant.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Hal F. Askins and Assistant Attorney General Kimberly P. Hunt, for respondent appellee.*

McCULLOUGH, Judge.

On 3 November 2000, plaintiff George Ellis filed a complaint against defendant D.W. Mayberry alleging false arrest, malicious prosecution, abuse of process and violation of his civil rights under 42 U.S.C. § 1983. The pertinent facts leading to plaintiff's lawsuit are as follows: In October 1997, plaintiff was interested in purchasing a pickup truck, and while attending an automobile auction, learned of a salvage dealer who sold trucks. Soon thereafter, plaintiff negotiated the purchase of a Toyota T-100 pickup truck from Terry White, who owned and operated Little Egypt Salvage, Inc. (Little Egypt), a salvage vehicle repair garage located in Alexander County, North Carolina. Mr. White agreed to sell plaintiff the truck for $14,750.00 and assured plaintiff that the vehicle had a clean title. Mr.

White was unable to locate the truck's title, but filled out a lost title application instead.

Plaintiff encountered difficulties when he attempted to register the vehicle in Gastonia, North Carolina. The Vehicle Identification Number (VIN) did not correspond to the computer index and the truck could not be registered. Plaintiff attempted to locate the truck's VIN, but could not find it. He drove back to Little Egypt and explained the problem to Mr. White. After searching through his spare parts, Mr. White located a doorframe that was part of the original truck, removed the VIN decal, and told plaintiff how to attach it to the truck. Mr. White informed plaintiff that the VIN was also located on the truck's chassis. Mr. White filled out a new lost title application and advised plaintiff to go to the license tag office in Taylorsville, North Carolina. Plaintiff successfully registered the truck in Taylorsville and transferred the tags and insurance from another truck he owned.

On 11 November 1997, plaintiff learned that his truck had to display a visible VIN in order to be properly registered. Plaintiff attempted to go to a Division of Motor Vehicles (DMV) office to seek advice, but the office was closed for Veteran's Day. Plaintiff returned to his home and located the VIN on the truck's chassis; however, the number was incomplete. Plaintiff became concerned that the truck was stolen and called Little Egypt and asked them to take the truck back. Mr. White's wife, who also worked at Little Egypt, talked to plaintiff and told him they would not accept the truck. She also stated that DMV officer would meet with plaintiff the next morning at Little Egypt to answer his questions about the truck.

Defendant David W. Mayberry was employed as an inspector with the North Carolina DMV and served a twelve-county territory that included Alexander County. One of Inspector Mayberry's duties was to inspect salvaged vehicles being rebuilt for sale by dealers. On 11 November, Mrs. White contacted Inspector Mayberry and told him about plaintiff's allegation that Little Egypt sold him a stolen truck. She also stated that she and her husband had offered to give plaintiff his money back, but that he was not satisfied. Mrs. White then asked Inspector Mayberry to come to Little Egypt to assist her and her husband with the matter, since he was the DMV inspector who examined the truck before Little Egypt worked on it. Even though Inspector Mayberry was on vacation, he agreed to meet plaintiff and the Whites at Little Egypt the following day.

**ELLIS v. WHITE**

[156 N.C. App. 16 (2003)]

On the morning of 12 November 1997, plaintiff went to Little Egypt as instructed and waited in the parking lot. Inspector Mayberry arrived approximately 30 minutes later in an unmarked car wearing jeans and a windbreaker reading "DMV Enforcement" on the back. Inspector Mayberry was also wearing two badges and carried his gun at his belt. Inspector Mayberry first went into the office, then returned outside to speak to plaintiff. Upon examining the truck, Inspector Mayberry was unable to locate a VIN on the truck's dashboard or on the door, but did see the incomplete VIN on the truck's chassis. Plaintiff told Inspector Mayberry he feared the truck was stolen, and wanted to return the truck and get a refund of both the purchase price and the fees associated with registering the truck at the tag office. Inspector Mayberry discussed the terms for cancelling the sale and told plaintiff he would check the partial VIN to see if the truck was stolen, then review his own paperwork on the inspection he performed before the truck was worked on by Little Egypt. Inspector Mayberry then left to attend to those matters.

Inspector Mayberry reviewed his paperwork, which reflected that he had inspected the truck and determined that it was not stolen. He then drove to the Taylorsville tag office and arranged to have the tag office cancel plaintiff's registration (in accordance with Mr. Ellis' request) and give Inspector Mayberry the cash plaintiff paid on 10 November. Inspector Mayberry was able to cancel the registration because the paperwork had not yet been processed. The Raleigh registration office was consulted and allowed the Taylorsville tag office to cancel the transaction. Inspector Mayberry did not get a receipt or other written record of the cancellation, nor did he inform plaintiff that he was obtaining his requested refund. He did, however, receive $497.50 in cash to return to plaintiff.

Inspector Mayberry went back to Little Egypt and met with plaintiff. According to plaintiff, Inspector Mayberry pushed a roll of cash into his stomach without explanation, and told him to take it and be satisfied. When plaintiff refused, Inspector Mayberry became angry, hit plaintiff in the stomach with the money, and made plaintiff feel threatened. Plaintiff then took the money and put it in his pocket without looking at it. According to Inspector Mayberry, when he returned with the registration refund, plaintiff stated he was not satisfied and wanted both a certified check for $15,000.00 and the registration money, as well as compensation for his trips to Alexander County. Inspector Mayberry stated he told plaintiff that he accom-

plished what plaintiff wanted, and that the issue of additional compensation was a matter to be discussed with Mr. White.

Despite these differing accounts, it is clear that Inspector Mayberry told plaintiff that the registration had not been processed and that title had never been transferred from Little Egypt to him. Inspector Mayberry explained that plaintiff was not the owner of the truck, and then asked plaintiff for the truck's keys and registration card. Plaintiff refused, and Inspector Mayberry told plaintiff he would be arrested unless he complied. Before arresting Mr. Ellis, Inspector Mayberry warned him three times that if he failed to hand over the keys and registration card, he would be arrested. Plaintiff allegedly replied that he would not comply and that Inspector Mayberry would have to arrest him. When plaintiff attempted to get into the truck and leave, Inspector Mayberry placed him under arrest. At some point before Inspector Mayberry and plaintiff left Little Egypt, Mrs. White came outside and told the men that she would write plaintiff a check for the purchase price of the truck.

Inspector Mayberry allowed plaintiff to sit in the front seat of the car and did not handcuff him as they drove to the county jail. Plaintiff testified he was held in a locked holding area and a small cell for one and one-half hours. During that time, he felt nauseated. However, according to Inspector Mayberry, no magistrate was available upon their arrival, so he had plaintiff wait in the jail office without being searched or being locked in a cell; plaintiff was also permitted to keep his cell phone the entire time. Just before Inspector Mayberry took plaintiff before the magistrate, Mrs. White hand delivered a certified check for $14,750.00 and the tag from the truck.

Plaintiff testified that Inspector Mayberry took him before a magistrate and charged him with resisting, delaying, and obstructing an officer. While before the magistrate, Inspector Mayberry informed plaintiff that additional charges were possible unless he immediately turned over the truck's keys and registration. When plaintiff complied, Inspector Mayberry gave him the certified bank check signed by the Whites for the purchase price of the truck, the tag, and $35.00 in cash. Inspector Mayberry also allegedly told plaintiff not to discuss the truck with anyone and to find his own way home to Gaston County. According to Inspector Mayberry, he served the warrant on plaintiff by reading it to him and giving him a copy. He later took plaintiff before the magistrate and explained the case. The magistrate found probable cause and then discussed the issue of setting bail.

Ultimately, Inspector Mayberry did not object when the magistrate released plaintiff on his own recognizance. Inspector Mayberry testified that plaintiff continued to refuse to hand over the keys and registration, but eventually did so at the urging of the magistrate.

On 8 December 1997, plaintiff was tried on the misdemeanor charge of resisting, delaying, and obstructing an officer under N.C. Gen. Stat. § 14-223 (2001). In the middle of the State's evidence, the trial court dismissed the case after finding that Inspector Mayberry had no duties related to the truck's registration and that there were, therefore, no duties for plaintiff to obstruct. The trial court stated:

> Court dismissed the case before the close of State's evidence for the reasons that the witness indicated that he was not involved in registration with vehicle and that this was a civil matter. State objected to the dismissal before the State's evidence was complete.

The State did not appeal the trial court's determination.

On 3 November 2000, plaintiff filed suit against Inspector Mayberry, Little Egypt, Mr. White, and Letha Phillips (the manager of the Taylorsville tag office) regarding the sale of the truck and the aforementioned events. The claims against Little Egypt, Mr. White, and Ms. Phillips were resolved prior to this appeal. On 13 July 2001, Inspector Mayberry moved for summary judgment based on sovereign immunity and qualified immunity. On 10 September 2001, the trial court entered an order granting summary judgment for Inspector Mayberry. Plaintiff appealed.

On appeal, plaintiff argues the trial court erred by granting summary judgment for Inspector Mayberry and by failing to grant summary judgment to him *ex mero motu*. For the reasons stated herein, we disagree with plaintiff's arguments and affirm the order of the trial court.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2001).

> The party moving for summary judgment has the burden of establishing the absence of any triable issue of fact. The purpose of Rule 56 is not to allow the court to decide an issue of fact, but to

determine whether a genuine issue of fact exists and thereby eliminate the necessity of a formal trial where only questions of law are involved and a fatal weakness in the claim or defense of a party is exposed.

*Foster v. Winston-Salem Joint Venture*, 303 N.C. 636, 641-42, 281 S.E.2d 36, 40 (1981). "Once the movant has established its right to summary judgment, the non-movant may not rest upon conclusory allegations but must come forward with affidavits showing that a material factual dispute exists." *Pierce Concrete, Inc. v. Cannon Realty & Construction Co.*, 77 N.C. App. 411, 412, 335 S.E.2d 30, 31 (1985).

## I. Immunity

In the present case, plaintiff sued Inspector Mayberry in both his official and individual capacities on three state law claims (false arrest, malicious prosecution, and abuse of process), and in his individual capacity on the federal civil rights claim under 42 U.S.C. § 1983. However, plaintiff's appeal only addresses "the trial court's granting of summary judgment to Mayberry on the state and federal individual-capacity claims." Therefore, we address only plaintiff's claims against defendant Mayberry in his individual capacity. Individual capacity lawsuits "seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25, 116 L. Ed. 2d 301, 309 (1991).

"The general rule is that suits against public officials are barred by the doctrine of governmental immunity where the official is performing a governmental function, such as providing police services." *Thomas v. Sellers*, 142 N.C. App. 310, 314, 542 S.E.2d 283, 286 (2001). Our Court has previously held that "an inspector of the DMV exercises some portion of sovereign power of the State and thus is a public officer[.]" *Murray v. Justice*, 96 N.C. App. 169, 176, 385 S.E.2d 195, 201 (1989), *disc. review denied*, 326 N.C. 265, 389 S.E.2d 115 (1990). "[A] public official is immune from personal liability for mere negligence in the performance of his duties, but is not immune if his actions were corrupt or malicious or if he acted outside and beyond the scope of his duties." *Marlowe v. Piner*, 119 N.C. App. 125, 128, 458 S.E.2d 220, 222-23 (1995). Public officials "enjoy absolute immunity from personal liability for their discretionary acts done without corruption or malice." *Schlossberg v. Goins*, 141 N.C. App. 436, 445, 540 S.E.2d 49, 56 (2000), *disc. reviews denied and dismissed*, 355 N.C. 215, 560 S.E.2d 136 (2002). "Discretionary acts are those requiring

personal deliberation, decision, and judgment." *Jones v. Kearns*, 120 N.C. App. 301, 306, 462 S.E.2d 245, 248, *disc. review denied*, 342 N.C. 414, 465 S.E.2d 541 (1995).

> To maintain a suit against a public official in his/her individual capacity, the plaintiff must make a *prima facie* showing that the official's actions (under color of authority) are sufficient to pierce the cloak of official immunity. Actions that are malicious, corrupt or outside the scope of official duties will pierce the cloak of official immunity, thus holding the official liable for his acts like any private individual.

*Moore v. Evans*, 124 N.C. App. 35, 42, 476 S.E.2d 415, 421 (1996) (citations omitted).

> One reason for the existence of such a rule is that it would be difficult to find those who would accept public office or engage in the administration of public affairs if they were to be held personally liable for acts or omissions involved in the exercise of discretion and sound judgment which they had performed to the best of their ability, and without any malevolent intention toward anyone who might be affected thereby.

*Miller v. Jones*, 224 N.C. 783, 787, 32 S.E.2d 594, 597 (1945); *see also Block v. County of Person*, 141 N.C. App. 273, 280-81, 540 S.E.2d 415, 421 (2000).

### (a) Sovereign Immunity on plaintiff's state law tort claims

[1] Defendant Mayberry argues, and we agree, that he is entitled to sovereign immunity on plaintiff's state law tort claims because there is no evidence that he intended his actions to be prejudicial or injurious to plaintiff. Plaintiff, on the other hand, contends Inspector Mayberry acted outside the scope of his authority by (1) cancelling his registration without a statutory basis; (2) negotiating the terms of a commercial transaction on behalf of Little Egypt; and (3) failing to produce written notice to him that the registration was cancelled and should be surrendered as required by N.C. Gen. Stat. §§ 20-111 and 20-48 (2001). We review each of these contentions in turn.

We do not discern any merit in plaintiff's first argument. It appears from the record that all of Inspector Mayberry's actions were done to resolve the conflict between Mr. White and plaintiff regarding the truck and to obtain the requested refund of the registration fees. After plaintiff stated he did not want the truck and instead wanted a

full refund of the purchase price and the registration fees, Inspector Mayberry went to the Taylorsville tag office and obtained a full refund of plaintiff's registration money. Thereafter, plaintiff accepted the money, put it in his pocket, and did not count it. Plaintiff never said he did not want the money, nor did he return the money to either Inspector Mayberry or Little Egypt. Plaintiff's repeated assertions that he wanted his money back could reasonably have been seen as an authorization and acceptance of Inspector Mayberry's actions. In any event, plaintiff accepted the refund and thereby ratified defendant Mayberry's actions. Plaintiff is therefore estopped from taking an inconsistent position now (*i.e.*, claiming that Inspector Mayberry was not acting on his behalf). *See Yarborough v. Yarborough*, 27 N.C. App. 100, 105-06, 218 S.E.2d 411, 415, *cert. denied*, 288 N.C. 734, 220 S.E.2d 353 (1975) (equitable estoppel); and *Carolina Medicorp v. Bd. of Trustees of the State Medical Plan*, 118 N.C. App. 485, 492, 456 S.E.2d 116, 120 (1995) (quasi-estoppel (also known as estoppel by acceptance of benefits)).

After giving plaintiff his refund, defendant Mayberry requested the truck's registration and keys, as he knew the truck was not registered to plaintiff. When plaintiff did not comply, Inspector Mayberry explained that his noncompliance would result in arrest. Moreover, before actually arresting plaintiff, Inspector Mayberry issued three separate warnings to him. Only then did Inspector Mayberry arrest plaintiff for resisting, obstructing, and delaying an officer. He subsequently took plaintiff to the magistrate's office, where a warrant was issued. Plaintiff was later released on his own recognizance.

With regard to plaintiff's second contention, we note that Inspector Mayberry did not negotiate the commercial transaction between plaintiff and Little Egypt. Before Mrs. White contacted Inspector Mayberry, she and her husband offered to refund the purchase price of the truck. However, plaintiff was not satisfied with the Whites' offer, as he also wanted a refund of his registration fees. Defendant Mayberry came to Little Egypt at the Whites' request to address plaintiff's concerns that the truck was stolen. Despite Inspector Mayberry's assurances that the truck was not stolen, plaintiff wanted to terminate the transaction and get a refund of the purchase price of the truck, the registration fees, and also requested compensation for his troubles. Rather than become involved in the dispute, Inspector Mayberry told plaintiff that any compensation issues would have to be settled between plaintiff and Little Egypt.

ELLIS v. WHITE

[156 N.C. App. 16 (2003)]

Finally, plaintiff's argument that Inspector Mayberry acted unlaw-fully by failing to provide written notice of the cancellation of the reg-istration as required by N.C. Gen. Stat. §§ 20-111(4) and 20-48 is mer-itless. N.C. Gen. Stat. § 20-111 provides, in pertinent part:

It shall be unlawful for any person to commit any of the fol-lowing acts:

(1) To drive a vehicle on a highway, or knowingly permit a vehicle owned by that person to be driven on a highway, when the vehicle is not registered with the Division in accordance with this Article or does not display a current registration plate.

(2) To display or cause to be displayed or to have in posses-sion any registration card, certificate of title or registra-tion number plate knowing the same to be fictitious or to have been canceled, revoked, suspended or altered[.]

* * * *

(4) To fail or refuse to surrender to the Division, upon demand, any title certificate, registration card or regis-tration number plate which has been suspended, can-celed or revoked as in this Article provided. Service of the demand shall be in accordance with G.S. 20-48.

Inspector Mayberry testified that the truck's title had never trans-ferred from Little Egypt to plaintiff because the registration had not been processed. "[B]asically it was never taken out of Little Egypt's name, never put in Mr. Ellis's name, when they backed it out. Because none of the paperwork had ever been sent to Raleigh, so therefore they treated it as the transaction had never happened." We believe plaintiff incorrectly based his argument on N.C. Gen. Stat. § 20-111(4) and instead should have looked to subsections (1) and (2). Defendant Mayberry had firsthand knowledge that the truck was not registered to plaintiff and had probable cause to arrest plaintiff for attempting to operate an unregistered vehicle on a highway and possessing a canceled/revoked registration card in violation of N.C. Gen. Stat. § 20-111(1) and (2). He also knew that legal title of the truck was in the name of the Whites and Little Egypt, so that plaintiff's attempts to take the truck amounted to attempted theft, unauthorized use and conversion in violation of N.C. Gen. Stat. §§ 14-72, -72.2, and -168.1 (2001), even though plaintiff may have retained an equitable interest and may have been entitled to a refund of the purchase money.

Defendant exercised his discretion and did not charge plaintiff on all these offenses, but his failure to do so did not mean those violations did not occur.

We also note that defendant Mayberry had probable cause to arrest plaintiff for resisting, obstructing, and delaying an officer. "Probable cause refers to those facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information which are sufficient to warrant a prudent [person] in believing that the suspect had committed or was committing an offense." *State v. Williams*, 314 N.C. 337, 343, 333 S.E.2d 708, 713 (1985). We further note that the magistrate also made an independent finding of probable cause. "[G]reat deference is to be paid the magistrate's determination of probable cause, and reviewing courts 'should not conduct a *de novo* review of the evidence to determine whether probable cause existed at the time the warrant was issued.' " *State v. Ledbetter*, 120 N.C. App. 117, 121-22, 461 S.E.2d 341, 343-44 (1995) (quoting *State v. Greene*, 324 N.C. 1, 9, 376 S.E.2d 430, 436 (1989), *cert. granted and vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990)).

We hold Inspector Mayberry did not act outside the scope of his authority in any of the three ways argued by plaintiff. Inspector Mayberry made a lawful arrest based upon probable cause and acted within the scope of his authority. Thus, the trial court properly granted summary judgment for defendant Mayberry in his individual capacity on plaintiff's state law tort claims on the ground of sovereign immunity.

**(b) Qualified Immunity on plaintiff's 42 U.S.C. § 1983 claim**

**[2]** Plaintiff contends defendant is not entitled to qualified immunity on the 42 U.S.C. § 1983 claim. Specifically, plaintiff believes that a reasonable person in defendant's position would have known, under the circumstances, that his actions violated plaintiff's right not to be arrested without probable cause. *See Roberts v. Swain*, 126 N.C. App. 712, 487 S.E.2d 760 (1997), *disc. review denied*, 347 N.C. 270, 493 S.E.2d 746 (1997). Plaintiff further contends defendant Mayberry lacked statutory authority for his actions and that plaintiff acted fully within his rights by refusing to surrender the truck, as defendant provided no written notice or any proof that the registration had been cancelled. Defendant Mayberry, on the other hand, argues that he is entitled to qualified immunity because plaintiff's claim fails in several respects. Upon review, we agree with defendant.

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, reg-
> ulation, custom, or usage, of any State or Territory or the District
> of Columbia, subjects, or causes to be subjected, any citizen of
> the United States or other person within the jurisdiction thereof
> to the deprivation of any rights, privileges, or immunities se-
> cured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper pro-
> ceeding for redress.

We note that "one cannot go into court and claim a 'violation of
§ 1983'—for § 1983 by itself *does not protect anyone against any-
thing*. . . . Standing alone, § 1983 clearly provides no protection for
civil rights since, as we have just concluded, § 1983 does not provide
any substantive rights at all." *Chapman v. Houston Welfare Rights
Org.*, 441 U.S. 600, 617-18, 60 L. Ed. 2d 508, 522-23 (1979). Defendant
argues plaintiff has failed to allege which of his federal constitutional
rights were abridged, and that such failure defeats his claim under
§ 1983. Though we agree that plaintiff did not clearly state the federal
constitutional right at issue, we can discern from his brief that he
believes his Fourth Amendment right was abridged. Thus, we address
the claim on its merits.

"Under the doctrine of qualified immunity, 'governmental offi-
cials performing discretionary functions generally are shielded from
liability for civil damages insofar as their conduct does not violate
clearly established statutory or constitutional rights of which a rea-
sonable person would have known.'" *Roberts*, 126 N.C. App. at 718,
487 S.E.2d at 765 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818,
73 L. Ed. 2d 396, 410 (1982)). "Therefore, ruling on a defense of qual-
ified immunity requires (1) identification of the specific right
allegedly violated; (2) determining whether at the time of the alleged
violation the right was clearly established; and (3) if so, then deter-
mining whether a reasonable person in the officer's position would
have known that his actions violated that right." *Lee v. Greene*, 114
N.C. App. 580, 585, 442 S.E.2d 547, 550 (1994). "If there are genuine
issues of historical fact respecting the officer's conduct or its reason-
ableness under the circumstances, summary judgment is not appro-
priate, and the issue must be reserved for trial." *Pritchett v. Alford*,
973 F.2d 307, 313 (4th Cir. 1992). "Only where the warrant application
is so lacking in indicia of probable cause as to render official belief in
its existence unreasonable, will the shield of immunity be lost."

**ELLIS v. WHITE**

[156 N.C. App. 16 (2003)]

*Malley v. Briggs*, 475 U.S. 335, 344-45, 89 L. Ed. 2d 271, 281 (1986) (citation omitted).

In the present case, defendant Mayberry argues the central issue is whether he acted in an objectively reasonable manner under the circumstances. *See Morrison-Tiffin v. Hampton*, 117 N.C. App. 494, 501, 451 S.E.2d 650, 655-56, *appeal dismissed, disc. review denied*, 339 N.C. 739, 454 S.E.2d 654 (1995). We agree. As discussed above, defendant had probable cause to arrest plaintiff for violating N.C. Gen. Stat. § 20-111(1) and (2). Inspector Mayberry acted within his authority as a law enforcement officer when he arrested plaintiff, because he had firsthand knowledge that plaintiff's registration had been canceled and that the truck was not properly registered to him. Plaintiff is unable to meet the test set forth in *Lee v. Greene*, 114 N.C. App. 580, 442 S.E.2d 547 and his assignment of error must fail. We therefore conclude that the trial court properly granted summary judgment for defendant Mayberry in his individual capacity on plaintiff's 42 U.S.C. § 1983 claim on the ground of qualified immunity.

## II. Tort Claims

[3] By his second assignment of error, plaintiff argues he was entitled to summary judgment on his tort claims *ex mero motu*. Plaintiff's complaint contained allegations of false arrest, malicious prosecution, and abuse of process. However, plaintiff never moved for summary judgment; consequently, the record contains no evidence that plaintiff presented this issue to the trial court. We therefore decline to address this assignment of error. *See* N.C.R. App. P. 9(a)(1)(h) and 10(b)(1) (2002); and *Buckingham v. Buckingham*, 134 N.C. App. 82, 91, 516 S.E.2d 869, 876, *disc. review denied*, 351 N.C. 100, 540 S.E.2d 353 (1999).

Upon careful review of the record and the arguments presented by the parties, we conclude the trial court properly granted summary judgment for defendant Mayberry based on sovereign immunity and qualified immunity. Accordingly, the trial court's order is

Affirmed.

Judges TYSON and BRYANT concur.