GARLAND H. MURRAY AND BROADWAY MOTOR COMPANY, INC. v. A. A. JUSTICE

No. 8929SC8

(Filed 7 November 1989)

1. **Malicious Prosecution § 13 (NCI3d)— DMV investigation of automobile dealer—no malice—no special damages**

Summary judgment was properly granted for defendant in a malicious prosecution action where defendant was an inspector with the North Carolina Division of Motor Vehicles investigating alleged violations of licensing laws relating to motor vehicle dealers and others; plaintiffs' license to operate as an automobile dealer had been suspended pursuant to a consent order; defendant was informed that plaintiffs sold two vehicles during the suspension period pursuant to a power of attorney for another dealer; defendant informed his superior who told him to investigate and prepare a report; defendant determined that in his opinion plaintiffs' conduct violated the consent order; defendant's supervisor ordered an additional one-year suspension; an administrative hearing officer subsequently decided that plaintiffs' conduct did not violate the consent order; defendant later investigated plaintiffs for odometer rollbacks; DMV's standard procedure after discoveries of this type was to investigate all sales transactions between involved dealers to determine if there were other alterations; upon learning that all of the records pertaining to automobiles handled by plaintiffs at another dealership were under investigation, the individual plaintiff went to defendant to complain; defendant then informed plaintiff that plaintiff was no longer under investigation; and defendant alleged that he knew of no contract between plaintiffs and the other dealership and had no intention of interfering with any of plaintiffs' contracts. Plaintiffs failed to show special damages in that neither plaintiffs nor their property suffered any substantial interference by the extension of the suspension and the administrative hear-

ing does not amount to a substantial interference with the plaintiffs' property or person as contemplated by the special damages requirement. Plaintiffs also failed to show malice, even though the further suspension was reversed at the administrative hearing, because defendant's actions were done in good faith in an effort to carry out his job duties.

**Am Jur 2d, Malicious Prosecution §§ 45-49, 68, 192, 193; Public Officers and Employees §§ 364, 382.**

2. **Contracts § 34 (NCI3d) — malicious interference with contract — DMV inspector — summary judgment for defendant proper**

Summary judgment was appropriate for defendant in an action for malicious interference with a contract where defendant was a DMV inspector and plaintiff an automobile dealer, defendant first investigated plaintiff for selling cars while on suspension, and defendant then investigated all of plaintiff's records with another dealer as a part of an odometer rollback investigation. There is no evidence on the record that defendant's actions were malicious in the legal sense and all of defendant's actions were pursuant to DMV's standard procedure.

**Am Jur 2d, Interference §§ 3, 27, 28, 37, 38.**

3. **Trespass § 2 (NCI3d) — intentional infliction of emotional distress — DMV inspector — summary judgment for defendant proper**

Summary judgment was properly granted for defendant in an action for intentional infliction of emotional distress arising from defendant DMV inspector's investigation of plaintiff automobile dealer where defendant's conduct was within the scope of his employment and was under the direction of his supervisor.

**Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 4-7; Public Officers and Employees § 379.**

4. **Public Officers § 9 (NCI3d) — DMV inspector — actions neither negligent nor malicious — immune**

An inspector for DMV whose investigation of plaintiffs was neither negligent nor malicious was afforded absolute immunity.

**Am Jur 2d, Public Officers and Employees §§ 358 et seq.**

MURRAY v. JUSTICE

[96 N.C. App. 169 (1989)]

APPEAL by plaintiffs from *Owens, Judge*. Order entered 21 October 1988 in Superior Court, RUTHERFORD County. Heard in the Court of Appeals 25 August 1989.

The plaintiffs sued defendant for malicious prosecution, malicious interference with contracts, and intentional infliction of emotional distress and sought punitive damages. The plaintiffs are engaged in the retail and wholesale automobile sales business. The defendant is an inspector employed by the Enforcement Section of the North Carolina Division of Motor Vehicles. The defendant's job duties include investigating alleged violations of licensing laws relating to motor vehicle dealers, manufacturers and salesmen, motor vehicle odometer alterations and other violations of Chapter 20 of the General Statutes.

Plaintiffs' license to operate as an automobile dealer had been suspended for nine months pursuant to a consent order dated 19 October 1984. During this suspension period, plaintiffs sold two motor vehicles pursuant to a power of attorney for James Motors, Inc. After being informed about this activity, the defendant reported it to his supervisor who instructed him to investigate the sales and prepare a report. The defendant discovered that the vehicles were purchased with the plaintiff Murray's money and that James Motor Company did not share in the profits or losses. The defendant then determined that in his opinion the plaintiffs' conduct violated the consent order. Defendant reported this to his supervisor. As a result, the defendant's supervisor ordered an additional one year suspension effective 25 January 1985. At a subsequent administrative hearing challenging this additional suspension, the administrative hearing officer decided that the plaintiffs' conduct did not violate the consent order because the terms of the order did not bar the plaintiffs from selling vehicles while acting as agents for another dealer.

Later, in September 1986 defendant investigated plaintiffs for alleged odometer rollbacks after it became apparent that two North Carolina vehicle titles reflected altered odometer readings. The vehicles for which the titles were issued were traded to the Smith-Huckabee dealership, sold to plaintiff Broadway Motor Company, and subsequently sold to a South Carolina dealer. DMV's standard procedure after discoveries of this type was to investigate all sales transactions between the involved dealers to determine if there were other alterations. Upon learning that all of the records per-

MURRAY v. JUSTICE

[96 N.C. App. 169 (1989)]

taining to the automobiles handled by them at the Smith-Huckabee dealership had been investigated, Murray went to defendant to complain. At that time, defendant informed him that he was no longer under investigation. The defendant alleges that he knew of no contract between the plaintiffs and the Smith-Huckabee dealership and had no intention of interfering with any of the plaintiffs' contracts.

The plaintiffs brought this action against the defendant complaining that the defendant initiated the hearing on 21 March 1985 pursuant to an order dated 22 January 1985 maliciously with the intent to harass the plaintiffs. As a result, plaintiffs allege they have suffered great damages and have incurred expenses. The plaintiffs also allege that the record inspection at the Smith-Huckabee dealership was initiated by the defendant with the intent to harass and intimidate the plaintiffs. The plaintiffs claim that they were subjected to severe emotional distress and mental anxiety resulting in anxiety tension reactions, sleeplessness, and increased blood pressure.

In an affidavit, the defendant answered that he only knew the plaintiffs in a professional capacity and that all of his actions were conducted within the course and scope of his employment and were customary for his position. The defendant alleged that he had no ill will or malice and that all of his actions were based on reasonable suspicion.

The defendant moved for summary judgment and to dismiss the plaintiffs' action pursuant to Rule 12(b)(1), (6), and (7) and contended that he possessed absolute or at least qualified immunity and was not liable to plaintiffs as a matter of law. The trial judge granted defendant's motion after determining that there was no genuine issue as to a material fact to submit to the jury. The plaintiffs appeal.

*Robert W. Wolf for plaintiff-appellants.*

*Attorney General Thornburg, by Assistant Attorney General William B. Ray, for defendant-appellee.*

EAGLES, Judge.

In reviewing an order of summary judgment, we must determine whether there is no genuine issue of material fact and whether judgment was appropriate as a matter of law. *Waste Mngt. of*

MURRAY v. JUSTICE

[96 N.C. App. 169 (1989)]

*Carolinas, Inc. v. Peerless Ins. Co.*, 72 N.C. App. 80, 84, 323 S.E.2d 726, 729, *rev. allowed*, 313 N.C. 612, 330 S.E.2d 616, *reversed*, 315 N.C. 688, 340 S.E.2d 374, *rehearing denied*, 316 N.C. 386, 346 S.E.2d 134 (1986). In reviewing the grant of summary judgment, we examine the entire record. *Ellis v. Williams*, 319 N.C. 413, 355 S.E.2d 479 (1987). After careful review of the record here, we conclude that there is no genuine issue of material fact as to any of the plaintiffs' claims and that the defendant is entitled to judgment as a matter of law. Accordingly, we affirm.

## I. Malicious Prosecution

[1] In order to recover for malicious prosecution the plaintiffs "must show that the defendant initiated the earlier proceeding, that he did so maliciously and without probable cause, and that the earlier proceeding terminated in plaintiffs' favor." *Stanback v. Stanback*, 297 N.C. 181, 202, 254 S.E.2d 611, 625 (1979). Malice, as required in malicious prosecution actions, may be inferred from a lack of probable cause when instituting the underlying action. *Cook v. Lanier*, 267 N.C. 166, 147 S.E.2d 910 (1966). If the underlying action was a civil action, the plaintiff must also prove special damages. 297 N.C. 181, 254 S.E.2d 611 (1979).

Here plaintiffs have failed to show any special damages. The court in *Stanback* has defined special damages as a "substantial interference either with the plaintiff's person or his property." 297 N.C. at 203, 254 S.E.2d at 625. Since the consent order of 25 January 1985 only extended the original suspension and was done prior to the expiration of the original suspension, neither the plaintiffs nor their property suffered any substantial interference. Plaintiffs allege that the administrative hearing, which they requested as a result of the order, caused them to suffer great injury to their reputation, business, and credit. This type of injury does not amount to a substantial interference with plaintiffs' property or person as contemplated by the special damage requirement. *Id.* at 204, 254 S.E.2d at 626. "Embarrassment, expense, inconvenience, lost time from work or pleasure, stress, strain and worry are experienced by all litigants to one degree or another, and by themselves do not justify additional litigation" in the form of a malicious prosecution claim. *Brown v. Averette*, 68 N.C. App. 67, 70, 313 S.E.2d 865, 867 (1984).

Further, plaintiffs have failed to show that the defendant acted maliciously. The defendant reported his suspicions to his superior

who told him to investigate the plaintiffs' activity. While under the restriction of the consent order, the plaintiffs had in fact sold two cars. Since the defendant believed that the consent order prohibited that activity and this was a reasonable interpretation of the order, defendant's actions were done in good faith in an effort to carry out his job duties. Although the decision to further suspend the plaintiffs' license was reversed at the hearing, we have held that "mere termination of a lawsuit in favor of an adverse party does not mean that there was a want of probable cause to believe on a set of stated facts that a cause of action did exist." *Petrou v. Hale*, 43 N.C. App. 655, 658, 260 S.E.2d 130, 133 (1979), *cert. denied*, 299 N.C. 332, 265 S.E.2d 397 (1980).

Here, because the plaintiffs have failed to forecast evidence of both special damages and malice, the defendant is entitled to summary judgment on the malicious prosecution claim.

## II.  Malicious Interference With Contracts

[2]  " 'The overwhelming weight of authority in this nation is that an action in tort lies against an outsider who knowingly, intentionally and unjustifiably induces one party to a contract to breach it to the damage of the other party.' " *Smith v. Ford Motor Co.*, 289 N.C. 71, 84, 221 S.E.2d 282, 290 (1976), *quoting Childress v. Abeles*, 240 N.C. 667, 84 S.E.2d 176 (1954). There are five essential elements to this tort: (1) that a valid contract existed between plaintiff and a third person, conferring upon the plaintiff some contractual right against the third person; (2) that the outsider had knowledge of plaintiff's contract with the other party; (3) that the outsider intentionally induced the other party not to perform his contract with plaintiff; (4) that in so doing the outsider acted without justification; and (5) that the outsider's act caused plaintiff actual damages. *Childress* at 674, 84 S.E.2d at 181-82. In order to establish a *prima facie* case of malicious interference with contract, "a plaintiff must establish that the defendant's actions were malicious in the legal sense." *Murphy v. McIntyre*, 69 N.C. App. 323, 328, 317 S.E.2d 397, 401 (1984). Malice for these purposes "denotes the intentional doing of a harmful act without legal justification." 240 N.C. at 675, 84 S.E.2d at 182. Proof of actual malice is not sufficient. *Childress v. Abeles, supra.*

> Indeed, actual malice and freedom from liability for this tort may coexist. If the outsider has a sufficient lawful reason for inducing the breach of contract, he is exempt from liability

for so doing, no matter how malicious in actuality his conduct may be. A "malicious motive makes a bad act worse but it cannot make that wrong which, in its own essence, is lawful."

*Id.* at 675, 84 S.E.2d at 182, *quoting Bruton v. Smith*, 225 N.C. 584, 586, 36 S.E.2d 9, 10 (1945).

Plaintiffs allege that defendant's investigation of their records at the Smith-Huckabee dealership caused the termination of their relationship. Plaintiffs contend that the investigation was done with the intent to harass and intimidate. However, on this record there is no evidence that the defendant's actions were malicious in the legal sense. It is not disputed that plaintiffs had engaged in the activity that gave rise to the defendant's original suspicions, i.e., selling cars while under the consent order's restrictions. Moreover, the records at the Smith-Huckabee dealership were inspected due to suspicions of odometer rollbacks or alterations. The defendant was appointed to a task force to inspect sales records and this investigation was totally unrelated to the investigation concerning a violation of the initial consent order. All of the defendant's actions were done pursuant to DMV's standard procedure. The plaintiffs were later told that they were no longer suspects for odometer alterations. Defendant's actions were part of his job and under the circumstances were justified. Because plaintiffs have failed to forecast evidence to establish malice, the cause of action for malicious interference with contracts must fail. Accordingly, the trial judge's entry of summary judgment was correct.

### III.   Intentional Infliction of Emotional Distress

[3]   The essential elements of a claim for intentional infliction of emotional distress are: "(1) extreme and outrageous conduct; (2) which is intended to cause and does cause (3) severe emotional distress to another. The tort may also exist where defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). The "extreme and outrageous conduct" necessary for recovery is defined as conduct which "exceeds all bounds usually tolerated by decent society." *Stanback v. Stanback*, 297 N.C. at 196, 254 S.E.2d at 622. The determination of what is extreme and outrageous conduct is a question of law for the court. *Briggs v. Rosenthal*, 73 N.C. App. 672, 676, 327 S.E.2d 308, 311, *cert. denied*, 314 N.C. 114, 332 S.E.2d 479 (1985). We conclude that the defendant's conduct was within the scope of

his employment and was under the directions of his superior. In our judgment, it could not reasonably be regarded as extreme and outrageous conduct sufficient to satisfy a claim for intentional infliction of emotional distress. Summary judgment for the defendant was also proper on this claim.

## IV. Immunity

[4] While recognizing that the trial judge did not address the defendant's immunity argument in his summary judgment order, we note that the defendant's contention has merit.

"Our Supreme Court has established that when an action is brought against individual state officers or employees in their official capacities, the action is one against the State for purposes of applying the doctrine of sovereign immunity." *Harwood v. Johnson,* 92 N.C. App. 306, 309, 374 S.E.2d 401, 404 (1988), *disc. rev. granted,* 324 N.C. 247, 377 S.E.2d 754 (1989), *citing Insurance Co. v. Unemployment Compensation Comm.,* 217 N.C. 495, 8 S.E.2d 619 (1940). Under the doctrine of sovereign immunity, a state cannot be sued without its consent. *See Orange County v. Heath,* 282 N.C. 292, 192 S.E.2d 308 (1972); *Steelman v. City of New Bern,* 279 N.C. 589, 184 S.E.2d 239 (1971); *Pharr v. Garibaldi,* 252 N.C. 803, 115 S.E.2d 18 (1960); *Schloss v. Highway Commission,* 230 N.C. 489, 53 S.E.2d 517 (1949). For purposes of determining liability for negligent acts, our courts have distinguished between public employees and public officers and officials. "[A] 'public official' is immune from liability for 'mere negligence' in the performance of [his] duties, but he is not shielded from liability if his alleged actions were 'corrupt or malicious' [or] if 'he acted outside of and beyond the scope of his duties.' " *Harwood v. Johnson,* 92 N.C. App. 306, 309, 374 S.E.2d 401, 404, *quoting Wiggins v. City of Monroe,* 73 N.C. App. 44, 49, 326 S.E.2d 39, 43 (1985). On the other hand, " '[a]n employee of a governmental agency . . . is personally liable for his negligence in the performance of his duties proximately causing injury to another.' " *Harwood* at 309-10, 374 S.E.2d at 404, *quoting Givens v. Sellars,* 273 N.C. 44, 49, 159 S.E.2d 530, 534-35 (1968). Finally, this court has held that an inspector of the DMV exercises some portion of sovereign power of the State and thus is a public officer and is immune from negligence. *Thompson Cadillac-Oldsmobile, Inc. v. Silk Hope Automobile, Inc.,* 87 N.C. App. 467, 471, 361 S.E.2d 418, 421, *disc. rev. denied,* 321 N.C. 480, 364 S.E.2d 672 (1988).

**MURRAY v. JUSTICE**

[96 N.C. App. 169 (1989)]

The Division of Motor Vehicles is a duly authorized state agency that is administered by the Commissioner of Motor Vehicles under the authorization of the Secretary of the Department of Transportation. G.S. 20-2 (1983 and Supp. 1988). The powers of the Commissioner include promoting the interests of retail buyers and preventing unfair methods of competition and unfair or deceptive acts or practices. The Commissioner may make rules and regulations that are necessary or proper for the effective administration and regulation of motor vehicle licensing laws. G.S. 20-302 (1983). The Commissioner is also authorized to appoint agents, field deputies and clerks necessary to administer and enforce motor vehicle licensing laws. G.S. 20-39 (1983 and Supp. 1988).

The plaintiffs recognize that *Thompson* establishes that an inspector is a public official who is immune from liability for negligent acts, but argue that no such immunity exists for the defendant because his acts were malicious. The defendant is an inspector employed by the Enforcement Division of DMV. His investigation of the plaintiff was not negligent or malicious. Accordingly, he is afforded absolute immunity.

Finally, the plaintiffs cite *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L. Ed. 2d 396 (1982) to refute the defendant's contention that his action should at least be afforded qualified immunity as a quasi-judicial function if he was not given absolute immunity. In *Harlow*, two aides and advisers of the President of the United States were entitled to qualified immunity from civil damages for their conduct in seeking the discharge of a civilian employee of the Department of Air Force. The United States Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id*. at 818, 102 S.Ct. at 2738, 73 L. Ed. 2d at 410.

Since the defendant's actions were totally within the purview of his ministerial functions, he is absolutely immune from liability and there is no need to address the applicability of *Harlow* to this case.

For the reasons stated, the decision of the trial court to grant the defendant's motion for summary judgment is affirmed.

Affirmed.

Judges JOHNSON and GREENE concur.