**Debbie D. KIMES, Plaintiff,**

v.

**LABORATORY CORPORATION OF AMERICA, INC., Defendant.**

No. 1:00 CV 01093.

United States District Court, M.D. North Carolina.

April 8, 2004.

Debbie D. Kimes, Snow Camp, NC, pro se.

Martin N. Erwin, Julianna Cochran Theall, Smith Moore, L.L.P., Greensboro, NC, for Defendant.

## MEMORANDUM OPINION

OSTEEN, District Judge.

Plaintiff Debbie D. Kimes, acting pro se, brings this action against Defendant Laboratory Corporation of America Holdings ("LabCorp") claiming violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). Plaintiff also asserts state law claims of wrongful termination, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent supervision or retention. This matter is now before the court on LabCorp's motion for summary judgment as to all of Plaintiff's claims.

## I. BACKGROUND

Plaintiff, a black female, was hired by LabCorp in June 1996 as an Accounts Receivable Representative. From September 1997 to August 1998, Plaintiff applied for approximately six promotions to analyst positions. Plaintiff did not receive any of the four promotions she applied for in 1997, and on February 19, 1998, she filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that she was denied these promotions because of her race.[1] In May 1998, as a result of her fifth application,

---

1. With regard to this EEO ("Equal Employment Opportunity") complaint, Plaintiff received a right-to-sue letter on August 20, 1999. Plaintiff subsequently filed suit on November 24, 1999, alleging a Title VII claim of discriminatory failure to promote. That case was dismissed without prejudice on January 18, 2001.

Plaintiff was selected for an analyst position, but she decided not to accept it when LabCorp declined to increase the annual salary from $22,880 to $28,000. In August 1998, Plaintiff's sixth application resulted in another offer to become an analyst; Plaintiff accepted that promotion.

In her new capacity as Medicaid Analyst in the submissions department, Plaintiff was responsible for reviewing Medicaid claims, determining whether they had been paid or needed to be resubmitted, reporting her findings, and, if appropriate, electronically resubmitting claims to the Medicaid carrier. Plaintiff was also required to participate in conference calls with the informational services department and other LabCorp offices regarding the progress of resubmitted claims.

Five months after she started her new position, Plaintiff began receiving reprimands and complaints. From February to April 1999, Plaintiff was given numerous reprimands for absenteeism. It was alleged that Plaintiff frequently disappeared from her desk, left work to move her car, engaged in extended lunch breaks, left work early, and took days off without following LabCorp's protocol for requesting leave.

During that same period, Plaintiff also allegedly had trouble with her job performance. On April 14, 1999, Plaintiff allegedly duplicated 18,000 claim resubmissions. Duplications of this nature were problematic for LabCorp because they were inefficient, expensive, and illegal, potentially resulting in a systems crash or fines imposed by carriers. On April 22, April 23, June 1, and June 2, 1999, Plaintiff participated in conference calls and meetings with other LabCorp departments and her own supervisors. During each of these meetings, Plaintiff was alleged to have acted disruptively and in an unprofessional manner, becoming frustrated and aggressive.

Additionally, on May 5 and June 7, 1999, Plaintiff's supervisors received complaints regarding her performance. The first complaint alleged that Plaintiff failed to return calls or perform tasks as requested by the billing department. The second complaint alleged that Plaintiff failed to return a call from the informational systems department. That department had asked Plaintiff to confirm that she would not resubmit certain claims; when she failed to respond, informational systems decided to shut down the entire submissions program to prevent Plaintiff from duplicating claims, as she was alleged to have done in the past.

Plaintiff received several written reprimands regarding her attendance and performance issues. The last of these was received on April 26, 1999. Plaintiff additionally received numerous verbal warnings regarding her participation in the June 1 and 2 conference calls and the June 7 complaint against her. Plaintiff was terminated on June 8, 1999.

Plaintiff alleges that her treatment was discriminatory, and that her termination and final reprimand were taken in retaliation for her earlier Equal Employment Opportunity ("EEO") complaint. On October 21, 1999, she filed a second EEO complaint claiming discriminatory treatment and retaliation. Having received a right-to-sue letter from the EEOC on July 29, 2000, Plaintiff filed the instant case on October 27, 2000, alleging various Title VII [2] and state law claims. LabCorp de-

---

**2.** Plaintiff's Title VII claims include allegations of discriminatory treatment and retaliation, as complained of in her second EEO complaint filed on October 21, 1999. Plaintiff has also resurrected the Title VII failure to promote claim she advanced in her first EEO complaint filed on February 19, 1998. Although Plaintiff asserted her failure to promote claim in a previous lawsuit, she is free to reassert that claim because, as mentioned

nies any wrongful conduct and claims that Plaintiff was fired due to attendance and performance problems.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that there is no genuine issue of material fact, thus entitling the moving party to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the nonmoving party is to prevail, there must be more than just a factual dispute; the fact in question must be material and the dispute must be genuine. *See* Fed R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Although the court must view the facts in the light most favorable to the nonmovant, *see Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513, "bare allegations unsupported by legally competent evidence do not give rise to a genuine dispute of material fact." *Solis v. Prince George's County*, 153 F.Supp.2d 793, 807 (D.Md.2001). Summary judgment should be granted unless a reasonable jury could return a verdict in favor of the nonmovant on the evidence presented. *McLean v. Patten Communities, Inc.*, 332 F.3d 714, 719 (4th Cir.2003) (citing *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2509–10).

## III. ANALYSIS

Plaintiff alleges that she was denied promotions and subjected to race-based discrimination and retaliation in violation of Title VII. She also asserts a state law

claim of wrongful discharge, claiming that her termination was discriminatory and therefore contrary to North Carolina public policy. Plaintiff further alleges that discriminatory conduct by LabCorp employees caused her severe emotional distress, giving rise to her state law claims of intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent supervision or retention. The court will address each of these claims in turn.

### A. Failure to Promote Claim

Plaintiff asserts that she was denied promotions to analyst positions for discriminatory reasons and filed an EEO complaint on February 19, 1998. The EEOC responded by sending Plaintiff a right-to-sue letter dated August 20, 1999. Plaintiff subsequently filed suit on November 24, 1999,[3] alleging discriminatory failure to promote in violation of Title VII LabCorp asserts that this claim is time barred because Plaintiff filed suit more than 90 days after receiving her right-to-sue letter.

■ The right-to-sue letter at issue is dated August 20, 1999. When asked if she received this letter "on or shortly after August 20, 1999," Plaintiff responded, "Right. August 20th, 1999, right." (Pl.'s Dep. at 145.) Since it is not clear the exact date Plaintiff received the right-to-sue letter, the court will assume that the letter arrived in three days, pursuant to Rule 6(e) of the Federal Rules of Civil Procedure. *See Nguyen v. Inova Alexandria Hosp.*, No. 98–2215, 1999 WL 556446, at *3 (4th Cir.1999) (holding that it was

---

herein, the initial lawsuit was dismissed without prejudice.

**3.** Although Plaintiff now asserts her failure to promote claim in the instant case, filed on October 27, 2000, she first advanced the

claim in a lawsuit filed on November 24, 1999. Since that initial suit was dismissed without prejudice, Plaintiff's failure to promote claim as asserted in this lawsuit will relate back to November 24, 1999.

proper to presume that a pro se plaintiff's right-to-sue letter was delivered three days after it was issued since the evidence did not demonstrate when actual delivery occurred). Under this assumption, the letter would have been delivered on August 23, 1999. The court views this assumption as sound, since Plaintiff confirmed that her receipt of the letter was "on or shortly after August 20" and that she also received her second right-to-sue letter from the EEOC only two days after it was issued. (*See* Pl.'s Resp. Def.'s Mot. Summ. J. at 1.)

■ Treating the date of delivery as August 23, 1999, the court concludes that Plaintiff should have filed her complaint by November 21, 1999. Since she did not file until November 24, 1999, her complaint is time barred. The court, however, must also determine whether equitable considerations dictate that this deadline should be tolled. *See Nguyen,* 1999 WL 556446, at *3–4 (considering whether equitable tolling should be applied after use of the three-day delivery rule resulted in a pro se plaintiff's complaint being time barred). Here, there is no indication that Plaintiff was not receiving her mail, that the mail was delivered late, or that she was otherwise prevented from receiving the right-to-sue letter. Further, despite Defendant's assertion that her claim is time barred, Plaintiff has not argued in her responsive brief or her deposition that she received the letter later than August 20, 1999. Accordingly, the court concludes that Plaintiff filed her claim after the 90–day period had expired. *See id.* (concluding that equitable tolling should not apply to save pro se plaintiff's complaint from being time barred); *Watts–Means v. Prince George's Family Crisis Ctr.,* 7 F.3d 40, 42 (4th Cir.1993) (same); *Harvey v. City of New Bern Police Dep't,* 813 F.2d 652, 654 (4th Cir.1987) (same). As such, Plaintiff's Title VII failure to promote claim is time barred.

■ Unlike Title VII, 42 U.S.C. § 1981 does not require plaintiffs alleging employment discrimination to pursue administrative remedies. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459–61, 95 S.Ct. 1716, 1719–21, 44 L.Ed.2d 295 (1975). Plaintiff's claim, therefore, would not be time barred if she asserted it under § 1981. Before finding that it lacks subject matter jurisdiction over Plaintiff's failure to promote claim, the court must first consider whether Plaintiff raised that claim under § 1981.

On July 23, 2001, Plaintiff moved to amend her amended complaint. Plaintiff did not attach a copy of the proposed second amended complaint, but did state that she wished to seek injunctive relief, correct the defendant's name, assert that she mitigated damages, and more clearly state a claim upon which relief could be granted. In granting her motion to amend, the court directed Plaintiff to submit a second amended complaint that would "correct the Defendant's name, more clearly state a claim, request injunctive relief, and reflect mitigation of damages." *Kimes v. Laboratory Corp. of Am., Inc.,* No. 1:00CV01093, 2002 WL 31812919, at *1 (M.D.N.C. Dec.13, 2002).

On December 26, 2002, Plaintiff filed her second amended complaint, adding a section entitled "Injunctive Relief." Under this heading, Plaintiff stated that "[t]he aforementioned acts of the defendant constitute unlawful discrimination and retaliation against plaintiff in violation of Title VII ... 42 U.S.C. § 1981, and N.C. G.S. § 143–422.2." (Second Am. Compl. at 7 ¶ 2.) Nowhere else in the second amended complaint, or in any of the previous complaints, did Plaintiff express a desire to pursue a claim under § 1981 or otherwise mention the statute. The reference seems to be arbitrary since injunctive relief was available under Title VII, the federal stat-

ute to which Plaintiff's filings had, to that point, exclusively referred. The added language may simply have been standard terminology provided by the attorney Plaintiff admits she consulted before filing her second amended complaint. (*See* Pl.'s Mot. Amend Am. Compl. ¶¶ 2–5.) In any event, the inclusion of a claim under § 1981 would be inconsistent with this court's order of December 13, 2002, which did not grant Plaintiff leave to amend her complaint by adding an entirely new claim. As such, this court will not construe the second amended complaint as adding a claim under § 1981; Plaintiff's discrimination claims will be considered under Title VII and North Carolina state law only.

Since Plaintiff failed to file her complaint within 90 days of receiving her right-to-sue letter, her Title VII failure to promote claim is time barred. The court must dismiss this claim for lack of subject matter jurisdiction.

### B.   Remaining Discrimination Claims

■   Plaintiff also asserts that, because of her race, LabCorp delayed her annual review and pay raise, suspended her, gave her a poor work evaluation, lost her applications for promotions, required her to obtain a greater number of supervisor signatures on those applications, reprimanded her, and terminated her. Since Plaintiff has not provided direct evidence to support these allegations, she will only prevail if she demonstrates a prima facie case of race discrimination under Title VII.[4] *See, e.g., McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Therefore, Plaintiff must show that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) there were circumstances giving rise to an inference of discrimination, and (4) her performance met LabCorp's legitimate expectations. *See Bryant v. Bell Atl. Md., Inc.,* 288 F.3d 124, 133 (4th Cir.2002); *Causey v. Balog,* 162 F.3d 795, 802 (4th Cir.1998).

■   Although Plaintiff is clearly a member of a protected class, she has failed to establish the remaining elements of her prima facie case. First, an adverse employment action cannot be demonstrated unless the " 'terms, conditions, or benefits' of employment" were affected. *Von Gunten v. Maryland,* 243 F.3d 858, 866 (4th Cir.2001) (quoting *Munday v. Waste Mgmt. of N. Am., Inc.,* 126 F.3d 239, 243 (4th Cir.1997)). Several of the circumstances Plaintiff complains of do not constitute adverse employment actions. For example, on April 23, 1998, Plaintiff received a poor evaluation due to alleged inefficiency and punctuality. (Pl.'s Resp. Def.'s Mot. Summ. J. Ex. 18.) A portion of that evaluation was later rescinded at Plaintiff's request. (Pl.'s Dep. at 124–25.) An addendum was also attached on June 29, 1998, indicating that Plaintiff had improved her performance. (*Id.*) LabCorp's willingness to amend and update Plaintiff's evaluation does not indicate any animosity toward her and there is no suggestion that the evaluation affected the terms, conditions, or benefits of her employment. Plaintiff presents no evidence to the contrary, conceding that shortly thereafter she was given a raise. (*Id.* at 125.)

After receiving the poor evaluation, Plaintiff spent most of her working day on May 20, 1998, completing her own adden-

---

4.   Plaintiff's state law claim of wrongful termination is properly analyzed under the same framework as a Title VII claim of discriminatory discharge. *Hughes v. Bedsole,* 48 F.3d 1376, 1383 (4th Cir.1995); *North Carolina Dep't of Corr. v. Gibson,* 308 N.C. 131, 141, 301 S.E.2d 78, 85 (1983). Since Plaintiff has not shown direct evidence of race discrimination, she must prove a prima facie case of discriminatory discharge under Title VII to prevail on this state law claim. *See Hughes,* 48 F.3d at 1383.

dum to the evaluation. (*Id.* Ex. 22.) Plaintiff received a written reprimand indicating that she would be counseled for her use of working time to complete this addendum, which she had logged on her time sheet as a "special project." (*Id.*) This reprimand could have prevented Plaintiff from applying for promotions for six months. However, when Plaintiff discovered that the reprimand was preventing her from applying for promotions, she requested that it be removed from her file. (Pl.'s Resp. Def.'s Mot. Summ. J. at 4.) LabCorp agreed to her request, allowing Plaintiff to apply for and receive a promotion approximately one month later. (*Id.*; Pl.'s Dep. at 126.) These circumstance do not indicate discrimination or an adverse effect on the terms, conditions, or benefits of Plaintiff's employment.

As a further example of an alleged adverse employment action, Plaintiff cites a suspension she received for absences on February 12, 17, and 18, 1999. (McCauley Dep. Ex. 20.) Although the suspension was to last for three days, it was rescinded almost immediately once Plaintiff demonstrated that she had no prior disciplinary history regarding poor attendance. (Pl.'s Dep. at 66.) Although Plaintiff concedes that she took 40 hours of unscheduled time off from January to February 1999, LabCorp took no further disciplinary action against her. (*Id.* at 70.) Again, Plaintiff has not shown any discrimination or adverse effect to the terms, conditions, or benefits of her employment.

■ Of those allegations that could constitute adverse employment actions, Plaintiff has failed to demonstrate any circumstances from which discrimination could be inferred. For example, Plaintiff claims that LabCorp practiced discrimination by losing the applications of black employees. Plaintiff's co-worker, Ms. Beverly Cross, makes similar allegations by way of her deposition testimony. However, Ms. Cross does not provide any specific examples of or evidence to support this conclusion; nor does she claim that she was a victim of such practices. Conclusory and speculative allegations by Plaintiff and Ms. Cross do not suffice to support a showing of LabCorp's alleged racial animosity. *See Evans v. Technologies Applications and Serv. Co.*, 80 F.3d 954, 962 (4th Cir.1996); *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975–76 (4th Cir.1990) (determining that a district court was "justified in disregarding" affidavit testimony that was "very nearly entirely conclusory and devoid of specific facts to support [the affiant's] opinion").

Plaintiff also claims that LabCorp practiced discrimination by requiring a greater number of supervisor signatures before approving the applications of black employees. As evidence to support her assertion, Plaintiff has produced four applications she submitted for promotions between September and October 1997. She has also provided similar applications submitted by white employees during the same period. Plaintiff's applications bear between one and four authorizing signatures from her supervisors. (Aff. & Exs. Supp. Def.'s Mot. Summ. J. Exs. 7, 8, 12, 15.) The two applications submitted by white employees each bear two supervisor signatures. (*Id.* Ex. 3, 5.) This pattern indicates only that Plaintiff was sometimes required to provide more signatures than white employees, but was also sometimes allowed to provide fewer. Further, any inference of discriminatory motive is weakened significantly since Plaintiff was later offered two promotions shortly after applying for them.

Plaintiff next alleges that delays in her annual reviews and pay raises for 1998 provide some evidence of racial animus, as does a doubling of her workload that occurred in April 1999. Besides her own

assertions, Plaintiff provides no evidence that the delays were racially motivated. To the contrary, LabCorp's evidence shows that all annual reviews and raises were delayed for about six months due to a company-wide backlog. (McCauley Dep. at 41.) As mentioned above, Plaintiff's review was later completed, a portion of it was retracted at her request, and she subsequently received a raise. (Pl.'s Dep. at 119–25.) As to the doubling of Plaintiff's workload, Plaintiff's own testimony indicates that the increase was not discriminatory; she concedes that her white co-worker, Ms. Shelda Burgess, was also required to do twice as much work during April 1999. (*Id.* at 82.)

The only remaining evidence Plaintiff presents from which a reasonable jury could infer racism regards certain LabCorp employees and their use of the term "nigger" in the workplace. Only two incidents are described in which the term is used. In the first, Plaintiff and one witness, Ms. Cross, allege that a white co-worker asked a black co-worker "why could [black people] call each other Nigger but . . . got upset when white people called another black Nigger." (Cross Dep. at 29–30.) Ms. Cross testifies that the two employees "at that time were friends, and . . . they joked a lot." (*Id.* at 29.) Upon that inquiry, however, the black employee "got upset and sort of blew up at [the white employee]." (*Id.* at 13.) This reaction caused LabCorp to terminate the black employee. (*Id.*)

This evidence fails to provide any basis from which a jury could conclude that LabCorp's actions toward Plaintiff were motivated by racial animus. Ms. Cross states that the black employee was fired because "she should have handled it in a different way and not confronted [the white employee] one-on-one." (*Id.*) This evidence suggests only that the black employee was fired for her conduct, not due to her race.

Further, the white employee's use of the term in this context does not imply that the employee or LabCorp harbored any racial animosity toward Plaintiff or any other black employee.

The second incident described by Plaintiff and Ms. Cross involves three white employees who had a verbal altercation at work. The white employees had gone to lunch together and, at some point after they returned, one of them accused the other two of using the same offensive term while the three were at lunch. (*Id.* at 17–18.) There is no indication as to how the term was used during the lunch, but it is clear that the term was not directed at any individual during the altercation at LabCorp, the two employees accused of using the term denied it, and none of their supervisors were aware the altercation occurred. (*Id.* at 18.) Again, this evidence does not raise an inference of race discrimination by LabCorp. There is no allegation that the term was used in a derogatory fashion, either at or away from the workplace, and the altercation at LabCorp did not involve Plaintiff, Ms. Cross, or any other black employee. Even if the court were to assume that a racially derogatory word was used in an offensive manner, there is no evidence that LabCorp knew of or condoned such action.

The incidents and circumstances described do not suggest race-based animus by LabCorp even when considered in the light most favorable to Plaintiff. Plaintiff has presented no evidence from which a reasonable jury could find that LabCorp's actions were motivated by discriminatory purposes and, as such, she has failed to demonstrate the third element of her prima facie case.

Plaintiff has also failed to show the fourth element of her prima facie case; she has not shown that her work met with LabCorp's legitimate expectations. From

mid-April to early June 1999, Plaintiff had well-documented problems with attendance and performance. With regard to attendance, Plaintiff received disciplinary counseling on April 15, 1999, due to repeated tardiness, excessive lunch hours, leaving work to move her car, and disappearing from her desk without explanation. (Pl.'s Dep. Ex. 16.) Despite this discipline, Plaintiff took an extra 45 minutes for lunch on April 16, 1999, and left work at one o'clock on April 23, 1999. (*Id.* Ex. 17.) Although her early departure on April 23 was due to the imminent death of her grandfather, Plaintiff failed to properly notify her supervisors when she needed to leave. (*Id.*) These two absences were documented in Plaintiff's final reprimand on April 26, 1999.

Plaintiff's most notable difficulties occurred during a series of conference calls, during which Plaintiff discussed the status of Medicaid claims. On April 22, 1999, Plaintiff participated in a conference call with her own supervisors from the submissions department and Mr. John Richter, a supervisor in the informational services department. The purpose of the call was to determine how a large volume of claims had been resubmitted twice.[5] During that call, Plaintiff and Mr. Richter engaged in a verbal altercation and Plaintiff walked out. (*Id.* at 98–99, 102, Ex. 17.) Plaintiff's actions were documented in her April 26, 1999, reprimand.[6] Despite this discipline, Plaintiff twice more participated in conference calls in a manner that her supervisors found unprofessional. During the first call, on June 1, 1999, Plaintiff spoke to LabCorp's Detroit office in a frustrated

manner and did not know the answer to questions regarding tasks that were within her responsibilities. Due to Plaintiff's conduct, one of her supervisors determined that the call should be terminated and rescheduled. (*Id.* at Ex. 18.) On June 2, 1999, another supervisor had to remove Plaintiff from a conference call during which she became argumentative with another member of the informational services department. (*Id.*)

Plaintiff also had difficulty responding to contacts from other departments. On May 5, 1999, a billing manager called Plaintiff's supervisor to complain that Plaintiff consistently failed to follow up on issues he asked her to address. (*Id.* Ex. 24.) The billing manager stated that he was finally forced to contact Plaintiff's supervisors when two weeks passed and Plaintiff had not completed her tasks or responded to phone calls. (*Id.*) On or about June 7, 1999, Plaintiff's supervisor received another call, this time from the informational services department, again regarding Plaintiff's failure to respond to phone calls. (*Id.* Ex. 25.) Plaintiff's failure to respond on that occasion, as well as her history of submitting duplicate claims, caused the informational services department to shut down LabCorp's claim re-submission program so as to avoid further duplications. (*Id.*) The shutdown prevented Plaintiff and all other analysts from using the program. (*Id.*)

Plaintiff's supervisors state that Plaintiff's numerous attendance problems and her inappropriate conduct, particularly toward other LabCorp departments, caused

---

**5.** Mr. Richter accused Plaintiff of causing the duplicate submissions, a charge she denies. However, the question of actual blame appears to be irrelevant since Plaintiff admits her position as Medicaid Analyst caused her to be responsible for the duplications, whether or not she actually implemented them. (Pl.'s Dep. at 93.)

**6.** Plaintiff's supervisors claim that she became defensive and aggressive on April 23, 1999, when confronted with the allegations that would later be included in the disciplinary report. (Pl.'s Dep. Ex. 17.)

them to terminate her employment on June 8, 1999. Plaintiff responds to the evidence of her poor performance by insisting that, despite some problems, her work did conform to LabCorp's expectations. Although Plaintiff concludes that she was reprimanded and fired because of her race, rather than her behavior, this assertion is not sufficient to withstand a motion for summary judgment. *See Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir.1988) (stating that a plaintiff's "own naked opinion, without more, is not enough to establish a prima facie case of age discrimination"). Again, Plaintiff has presented no evidence to suggest that LabCorp's actions were motivated by racial animus. Likewise, Plaintiff's own belief that her job performance met with LabCorp's expectations is irrelevant. *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir.1998); *Evans v. Technologies Applications and Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir.1996); *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir.1980). Beyond her own conclusions, Plaintiff offers only the assessment of her co-worker, Ms. Cross, and some positive work evaluations Plaintiff received. (*See* Cross Dep. at 6; Pl.'s Dep. Exs. 14–15; McCauly Dep. Exs. 36–37.) Since Ms. Cross was not a supervisor, her statement that Plaintiff's performance was satisfactory is not probative. "[T]hat plaintiff's coworkers 'may have thought [that she] did a good job, or that [she] did not "deserve" [to be discharged], is close to irrelevant.' " *DeJarnette*, 133 F.3d at 299 (alterations in original) (quoting *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 235 (4th Cir.1991)). Further, Ms. Cross acknowledged that she does not actually know why Plaintiff was terminated. (Cross Dep. at 33.)

As to Plaintiff's work evaluations, one is mostly positive and indicates some areas for improvement while another gives Plaintiff an average rating. Since both were completed prior to Plaintiff's repeated problems with attendance and performance, neither indicates that LabCorp did not have a legitimate reason to fire Plaintiff when these circumstances arose. Additionally, Plaintiff has submitted two "kudos," [7] or written compliments, she received from co-workers in her department. Again, both were completed prior to Plaintiff's decline in attendance and performance. Further, both kudos indicate only that Plaintiff's co-workers thought she was performing well, a fact that is not probative here. *See DeJarnette*, 133 F.3d at 299. None of Plaintiff's evidence indicates that her work met LabCorp's legitimate expectations. As such, Plaintiff cannot establish the final element of her prima facie case.

Plaintiff has failed to put forth evidence that she suffered adverse employment actions despite satisfactory job performance and under conditions giving rise to an inference of racial animus. As such, the court will grant Defendant's motion for summary judgment as to Plaintiff's Title VII employment discrimination claims. Since Plaintiff's state law claim of wrongful termination is analyzed under the same framework as these Title VII claims, *see, e.g., Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir.1995), summary judgment will also be granted as to that claim.

### C. Retaliation Claim

Plaintiff asserts that her final reprimand on April 26, 1999, and her termination on June 8, 1999, were in retaliation for her earlier EEO complaint which alleged that LabCorp failed to promote her

---

**7.** "Kudos" are written compliments given by one LabCorp employee to another, usually to commend job performance.

because of race. Since Plaintiff has not provided direct evidence of retaliatory motive, she is required to demonstrate a prima facie case of retaliation under Title VII. *See, e.g., McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). To succeed on her retaliation claim, Plaintiff must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) LabCorp took the adverse action because of the protected activity. *See Bryant v. Aiken Reg'l Med. Ctrs. Inc.,* 333 F.3d 536, 543 (4th Cir.2003); *Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 190 (4th Cir.2001).

It is not disputed that filing an EEO complaint is a protected activity. *See, e.g., Carter v. Ball,* 33 F.3d 450, 460 (4th Cir. 1994). It is also not disputed that Plaintiff's termination, if not also her final reprimand, was an adverse employment action. *See, e.g., Hartsell v. Duplex Prods., Inc.,* 123 F.3d 766, 775 (4th Cir.1997). The element in dispute is the alleged causal link between Plaintiff's EEO complaint and the reprimand and termination.

█ To demonstrate causation, Plaintiff presents only conclusory allegations and speculation. Both Plaintiff and Ms. Cross claim they and "other black employees" refrained from complaining of discrimination because they feared retaliation by LabCorp. (Pl.'s Dep. Ex. 21; Cross Dep. at 14.) No examples of unreported discrimination are demonstrated or even mentioned by either Plaintiff or Ms. Cross. Besides Plaintiff's claim herein, no examples of retaliation have been provided. Since speculation and bare allegations cannot form the basis of a Title VII claim, the statements by Plaintiff and Ms. Cross are insufficient to support Plaintiff's prima facie case. *See, e.g., Thompson v. Potomac Elec. Power Co.,* 312 F.3d 645, 649 (4th Cir.2002); *Bryant v. Bell Atl. Md., Inc.,* 288 F.3d 124, 135 (4th Cir.2002) (citing *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir.1995) ("Mere unsupported speculation . . . is not enough to defeat a summary judgment motion.")); *Hawkins v. PepsiCo, Inc.,* 203 F.3d 274, 281 (4th Cir.2000).

Plaintiff has also failed to demonstrate that any of her supervisors knew of her EEO complaint when they decided to reprimand and later fire her. "Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case." *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 657 (4th Cir.1998). LabCorp has presented evidence that the company maintains two files for each employee; one file contains all human resources information relevant to the individual, the other contains all information relating to any EEO charge an employee may have filed. (Holmes Aff. ¶ 3.) Supervisors do not have access to an employee's EEO file. (*Id.;* McCauley Dep. at 59–60.) Further, both supervisors who engaged in the decision to reprimand and terminate Plaintiff deny that they had any knowledge of her EEO complaint or that they considered race when making their determination. (Howard Aff. ¶ 5; Morrissette Aff. ¶ 7.) Plaintiff has not provided evidence to the contrary or directly disputed that her supervisors were unaware of her EEO complaint.[8]

8. When asked if her supervisors knew of her EEO complaint, Plaintiff responded that they must have known of it because they must have reviewed her human resources file; Plaintiff assumes the file included her EEO complaint. (Pl.'s Dep. at 53–54.) Even assuming, as Plaintiff does, that her supervisors reviewed her human resources file, that file did not contain the EEO complaint and would not have made them aware of its existence.

Plaintiff has produced no other evidence to support a causal link between her initial EEO complaint and her final reprimand and termination. Despite the absence of such evidence, Plaintiff's claim could survive summary judgment if the alleged retaliatory action occurred near in time to her filing of the EEO complaint. *Dowe*, 145 F.3d at 657 ("This Court has held that evidence that the alleged adverse action occurred *shortly* after the employer became aware of the protected activity is sufficient to satisfy ... a prima facie case of causation.") (internal quotation omitted); *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir.1989) (holding that causation can be inferred when only a few months passed between the protected activity and the adverse employment action).

■■■ Plaintiff's EEO complaint regarding LabCorp's failure to promote her was filed on February 19, 1998. The alleged retaliatory actions were taken on April 26 and June 8, 1999. This significant lapse of time does not support Plaintiff's claim of retaliation. *See Causey v. Balog*, 162 F.3d 795, 803 (4th Cir.1998) (holding that, absent other evidence, a thirteen-month interval between an EEO charge and alleged retaliatory termination was too long to establish a causal link); *Dowe*, 145 F.3d at 657 (holding that a three-year lapse between a protected activity and the alleged adverse employment action negates any inference of a causal connection between the two); *see also Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997) (deciding that a four-month lag between a protected activity and termination was too long to allow a court to infer the causation element of a prima facie retaliation case).

Since the interval between Plaintiff's protected activity and her reprimand and firing is too long to infer a causal link, Plaintiff has failed to support the causation element of her prima facie case. As such, LabCorp's motion for summary judgment will be granted as to Plaintiff's Title VII retaliation claim.

### D. Emotional Distress Claims

Plaintiff claims that the alleged discrimination by LabCorp caused her to suffer "emotional distress, including but not limited to chronic frustration, insomnia, and fear." (Second Am. Compl. at 5.) This suffering provides the basis for Plaintiff's state law claims of intentional and negligent infliction of emotional distress.

■■■ To succeed on her claim of intentional infliction of emotional distress, Plaintiff must show that (1) LabCorp engaged in extreme and outrageous conduct, (2) the conduct was intended to cause Plaintiff severe emotional distress, and (3) the conduct did, in fact, cause Plaintiff severe emotional distress. *See Denning–Boyles v. WCES, Inc.*, 123 N.C.App. 409, 412, 473 S.E.2d 38, 40–41 (1996). Conduct is extreme and outrageous when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hogan v. Forsyth Country Club Co.*, 79 N.C.App. 483, 493, 340 S.E.2d 116, 123 (1986) (internal quotation omitted). Whether conduct rises to this level is a question of law. *Murray v. Justice*, 96 N.C.App. 169, 175, 385 S.E.2d 195, 200 (1989).

■■■ To demonstrate extreme and outrageous conduct, Plaintiff points only to activities that occurred within the context of her employment at LabCorp. This court has held, however, that only "[r]arely will conduct in the employment context rise to the level of outrageousness necessary to provide a basis for recovery." *Swaim v. Westchester Acad., Inc.*, 170 F.Supp.2d 580, 584 (M.D.N.C.2001) (internal quotation omitted); *accord Atkins v.*

*USF Dugan, Inc.,* 106 F.Supp.2d 799, 810–11 (M.D.N.C.1999) (concluding that notifying an employee a month after his heart attack that he would be fired if he did not return to work, telling him he was too old to perform his job, and allegedly firing him in violation of federal and state discrimination laws did not constitute extreme and outrageous conduct); *Hogan,* 79 N.C.App. at 493–94, 340 S.E.2d at 122–23 (finding no extreme or outrageous conduct when supervisors screamed, called employees names, cursed at them, disrupted their work, threw menus at them, refused to grant pregnancy leave, and terminated an employee who left work due to labor pains). The worst behavior Plaintiff details is the rude manner in which Mr. Richter acted during a conference call. Plaintiff concedes that their confrontation lasted only two minutes and that he did not curse or call her names. (Pl.'s Dep. at 103.) This conduct, even if motivated by racial animus, is not extreme and outrageous as a matter of law. *See Atkins,* 106 F.Supp.2d at 810–11. Accordingly, LabCorp's motion for summary judgment will be granted as to Plaintiff's intentional infliction of emotional distress claim.

██ Plaintiff also asserts a claim of negligent infliction of emotional distress. In order to prove that claim, Plaintiff must show that (1) LabCorp negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause Plaintiff severe emotional distress, and (3) the conduct did, in fact, cause Plaintiff severe emotional distress. *See Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.,* 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). "[T]he term 'severe emotional distress' means any emotional or mental disorder ... which may be generally recognized and diagnosed by professionals trained to do so." *Id.* North Carolina courts do not recognize "a remedy for garden variety anxiety or concern, but only for *severe* distress." *Pacheco v. Rog-*

*ers & Breece, Inc.,* 157 N.C.App. 445, 449, 579 S.E.2d 505, 508 (2003); *accord Waddle v. Sparks,* 331 N.C. 73, 85, 414 S.E.2d 22, 27–28 (1992) ("The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." (emphasis omitted) (quoting Restatement (Second) of Torts § 46 cmt. j (1965))).

██ Plaintiff alleges that she "suffered emotional distress, including but not limited to chronic frustration, insomnia, and fear," Second Am. Compl. at 5, but does not forecast any evidence to support her conclusion. Plaintiff does not discuss her distress in her deposition testimony or responsive brief, claiming simply that she suffered "emotional distress and anguish." None of the witnesses deposed offer any information regarding this claim. Plaintiff has not indicated that a medical expert will testify concerning her condition, and does not claim that she ever sought or received any diagnosis. Although proof of severe emotional distress does not require medical evidence or testimony, *Coffman v. Roberson,* 153 N.C.App. 618, 627–28, 571 S.E.2d 255, 261 (2002), Plaintiff must at least produce some evidence that she suffered " 'severe and disabling' psychological problems." *Waddle,* 331 N.C. at 85, 414 S.E.2d at 28 (quoting *Johnson,* 327 N.C. at 304, 395 S.E.2d at 97). Plaintiff's mere allegation that she was frustrated, afraid, and sleep-deprived does not demonstrate that she suffered distress "so severe that no reasonable man could be expected to endure it." *Id.* As such, LabCorp's motion for summary judgment will be granted as to Plaintiff's negligent infliction of emotional distress claim.

E. Negligent Supervision or Retention Claim

██ Plaintiff alleges that LabCorp negligently supervised or retained employ-

ees who discriminated against her, thereby causing her to suffer emotional distress. To prove a claim of negligent supervision or retention, Plaintiff must demonstrate that LabCorp employees committed tortious acts, of which LabCorp had actual or constructive knowledge. *See Waddle v. Sparks,* 331 N.C. 73, 87, 414 S.E.2d 22, 29 (1992) (citing *Pleasants v. Barnes,* 221 N.C. 173, 177, 19 S.E.2d 627, 629 (1942)). Plaintiff's claims regarding emotional distress are the only torts alleged against LabCorp employees. Since Plaintiff has not demonstrated any evidence to support those claims, she has likewise failed to demonstrate any tortious conduct, an essential element of this claim. *See id.; see also Hartsell v. Duplex Prods., Inc.,* 123 F.3d 766, 774 (4th Cir.1997) (affirming summary judgment against a plaintiff's negligent supervision or retention claim upon finding "neither an underlying tort nor a violation of Title VII"). LabCorp is therefore entitled to summary judgment on Plaintiff's negligent supervision or retention claim.

## IV. CONCLUSION

Plaintiff's claim of discriminatory failure to promote is time barred; the court will dismiss this claim for lack of subject matter jurisdiction. Since Plaintiff has not established a prima facie case in support of her remaining Title VII claims, and has failed to prove the necessary elements of her state law claims for wrongful termination, intentional infliction of emotional distress, negligent infliction of emotional distress, and negligent supervision or retention, the court will grant LabCorp's summary judgment motion as to all of these claims. A judgment in accordance with this memorandum opinion shall be filed contemporaneously herewith.

### ORDER AND JUDGMENT

For the reasons stated in the memorandum opinion filed this same day,

IT IS ORDERED that Plaintiff's claim of discriminatory failure to promote in violation of Title VII is **DISMISSED** for lack of subject matter jurisdiction.

IT IS ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment [31] is **GRANTED** as to all of Plaintiff's remaining claims.